## DANIELS & FISHER STORES CO. v. GREGG et al.

### In re GREGG.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1925.)

Nos. 6853 and 266, Original.

1. Bankruptcy ☞303(3)—Evidence held to show judgment creditor's knowledge of bankrupt's insolvency at time of entry and levy of execution on judgment against bankrupt.

Evidence held to show that at time of entry of judgment and levying of execution, within four months prior to filing of bankruptcy petition, judgment creditor had knowledge of bankrupt's insolvency, and judgment lien was void as preference.

2. Bankruptcy ☞467—On appeal from decree in reclamation proceeding, Circuit Court of Appeals is not bound by fact finding of referee.

On appeal from decree affirming order of referee in bankruptcy on petition for reclamation of property, Circuit Court of Appeals may examine entire record, and is not bound by finding of referee as to fact not passed on by District Court.

Appeal from, and Petition to Revise Order of, the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

In the matter of Luther W. Gregg, bankrupt. From a decree affirming an order of the referee, denying a petition by the Daniels & Fisher Stores Company for reclamation of property in possession of trustee, petitioner appeals and petitions to revise. Petition to revise dismissed, and decree affirmed.

John Horne Chiles, of Denver, Colo. (Jacob L. Sherman, of Denver, Colo., on the brief), for appellant and petitioner.

William B. Vates, of Pueblo, Colo., for appellees and respondents.

Before STONE and VAN VALKENBURGH, Circuit Judges, and WILLIAMS, District Judge.

STONE, Circuit Judge. This controversy reaches this court both by appeal and by petition to revise. As questions of fact are involved in the review here and as only questions of law can be considered upon a petition to revise, the petition to revise is dismissed and the case considered as upon the appeal.

The appeal is from a decree affirming an order of a referee in bankruptcy upon what is, in effect, a petition for reclamation of property in the possession of the trustee. The property originally involved was a stock of merchandise belonging to the bankrupt, who conducted a store in a small town in Colorado. When the petition in bankruptcy was filed, this merchandise was in possession of a state sheriff under an execution levied on a judgment secured in the state court by appellant. The trustee procured an injunction preventing sale under the above execution and an order requiring the sheriff to turn the merchandise over to him. Having thus obtained possession, the trustee sold the merchandise and is holding the proceeds to await the result of this petition of reclamation.

[1] Several questions of law and others of fact have been presented here but we find it necessary to determine but one question of fact, since that is decisive of the controversy. The rights of appellant are based solely upon the lien of the execution on the judgment secured by appellant in the state court. This judgment was secured and this execution levied within four months prior to filing the petition in bankruptcy. In our opinion, the bankrupt was, at those times, known to be insolvent by appellant. Therefore, the lien claimed is a preference, within the meaning of the Bankruptcy Act (Comp. St. §§ 9585–9656), and must be declared void as against the trustee.

The substance of the evidence as to insolvency and the knowledge of appellant as to such is as follows:

The bankrupt was a merchant in the small town of Branson, Colorado. During four or five years he had been engaged in business, he had accumulated a stock of merchandise,

much of which consisted of clothing, boots and shoes. Some of this stock was out of date and shopworn. Most of it had depreciated in value. Besides this merchandise, he had a stock of furniture (which had been damaged by water) and some lumber. He owned and lived in a small house of four rooms. The entire property was appraised (less than two months after filing the petition in bankruptcy) at a total of $8,102.88. In addition, he had book accounts amounting to $4,115.39. Thus his entire assets were $12,218.27. His indebtedness was $11,725.85. Taking the accounts as of full value there was a balance of assets of $492.42. The evidence as to value of the property, excluding the accounts, is such that the appraised value is not seriously challenged. The bankrupt admitted that he had valued it at much more but this seems to have been, as he stated, a "guess" or to have been made to effect his own purposes. The question of solvency really turns upon the value of the accounts. The evidence as to them is not in dispute and is as follows: The trade territory tributary to Branson was largely newly settled by "homesteaders," many of whom had not perfected their rights to the land. Many of them had little machinery or farming implements. Because of a bad crop year in 1921, many had chattel mortgages upon their personal property. They were largely being carried by the merchants in Branson who were hoping that a good crop in 1922 would enable them to pay. The 1922 crop would not be harvested until the fall of that year. In February 1922, when this execution was levied, there was little or no chance of these farmers paying anything and the probability of ultimate payment depended upon the uncertainties of a successful crop the following fall. These accounts were owing by the above class of farmers. Some of the accounts were more than a year old. The honesty of the debtors was not questioned but the evidence clearly and undisputedly shows that there was little value in the accounts beyond the uncertain ability to pay dependent upon a successful crop, months later, from this new ground. The bankrupt estimated the value of the accounts to be, in February, 1922, twenty to thirty per centum of their face. Others estimated them to be worth twenty per centum, at that time. One witness thought that perhaps they were worth $1,000. There can be no doubt that they were, at that time, practically uncollectable and no sane person would have bought them, even at an unforced sale, for anything like their face amounts. We think it very clear that the bankrupt was insolvent in February, 1922, when the execution was levied.

This status was known to appellant. More than a month before appellant secured its judgment in the state court, it knew that the bankrupt was involved and could not meet his obligations. Acting in conjunction with three other creditors, it sent an agent to Branson who stayed in this store, watched its sales and applied the cash receipts to its debts. In this way, more than one thousand dollars was secured and thus applied. The bankrupt was continuously up to the time the sheriff took possession, pleading with appellant for time and opportunity to work out of his difficulties. It is clear that the agent was sent to Branson to watch the business, secure what payments he could and try to work out these debts owing by the bankrupt. It is clear, also, that appellant got all the money it could from the operation of the business and when it had so done sought to levy upon the entire stock to secure the balance due it and the three other creditors for which it was also acting. We have no doubt that the appellant knew the hopeless state of the bankrupt at that time.

[2] The referee found that the bankrupt was solvent at the time of the levy. The trial court expressly declined to rule upon the question of insolvency, sustaining the referee upon other grounds, which we have not discussed. Appellant contends that this court must accept the finding of the referee as to solvency. This is an equitable proceeding and we may examine the entire record. Nor are we faced with the situation that the finding of the referee is affirmed by the trial court. We entertain no doubt of our right and duty to examine the record and determine this matter of fact therefrom. In its reply brief, appellant states that all of the evidence is not in the transcript. The certificate of the clerk is to the contrary.

The decree should be and is affirmed.