In the Matter of GEORGIA JEWELERS, INC., Bankrupt.

No. 40228.

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 24, 1962.

Haas, Holland & Zinkow, Atlanta, Ga., for petitioning creditors.

Marvin P. Nodvin and Sidney Schell, Atlanta, Ga., for alleged Bankrupt.

MUNDY, Referee in Bankruptcy.

### STATEMENT AND HISTORY OF CASE

Four creditors of Georgia Jewelers, Inc. filed involuntary petition in bankruptcy on March 16, 1961 seeking adjudication of said debtor. These four creditors are Golden Shield Corporation, Gruen Watch Corporation, Bulova Watch Co. and Columbia Diamond Ring Co.

The petition alleged (1) debtor to be a business corporation organized and existing under the laws of the State of Georgia, and not a municipal, railroad, insurance or banking corporation nor a building and loan association; (2) that it had its principal place of business within the aforesaid judicial district for the six months preceding the filing of the petition; (3) that it has not been known and has not conducted business under any other name; (4) that it owes debts of $1,000,000.00 or over; (5) that petitioners are creditors in the amount of $58,000.00.

The petition further alleged that debtor within the preceding four months committed acts of bankruptcy by making preferential payments to Associated Investments, Inc. and other creditors while insolvent. It is also alleged that a further act of bankruptcy was committed by concealing its assets and removing its property with intent to hinder, delay or defraud its creditors and that it made fraudulent transfer of its property.

Debtor's answer admitted the jurisdictional allegations about its name, business and location. Other allegations

were denied in its first defense. As further defense the answer is directed at the sufficiency, definiteness and proper particularity of the petition.

In its paragraph 16 the answer admitted that sums were owing to petitioning creditors as follows:

Bulova Watch Co. $3,000.00 (approx.)

Columbia Diamond Ring Co. $4,000.00 (approx.)

Gruen Watch Co. $1,700.00

Golden Shield Corp. $3,183.00

but that any additional sums owed any of said petitioners were represented by promissory notes which were not yet due at the time of the filing of the complaint.

The answer further seeks to allege a cross action for damages against petitioners for bringing the complaint and having receiver appointed.

Subsequently the petitioning creditors offered amendment to their petition which after due hearing thereon was allowed by the Referee (approved C.C.A. 5 Georgia Jewelers, Inc. v. Bulova Watch Co., 302 F.2d 362) This amendment alleged that within four months next preceding the filing of the petition that debtor did, while insolvent, make preferential payments within the meaning of the bankruptcy act to antecedent creditors in the amounts and on the dates as more particularly set forth in the listing attached as Exhibit A and incorporated by reference. (the attached exhibit listed 62 transactions with name, amount and date)

Alleging further the amendment says that the alleged bankrupt concealed, removed, and permitted to be concealed and removed substantially all of its property with intent to hinder, delay or defraud its creditors, and has further suffered or made transfer of its property fraudulent under the provisions of Section 67 or 70 of the Bankruptcy Act in that the alleged bankrupt on or about the 15th day of January, 1961 did consult and agree with Associated Investments of Georgia, Inc. to allow foreclosure on a substantial part of alleged bankrupt's property at a time and under circumstances when the security instrument foreclosed was not in default; that the alleged bankrupt in no way attempted to forestall or prohibit the foreclosure and made no provision for the payment of its debts and is without assets so to pay them.

By paragraph 7(b) the amendment on information and belief alleges that debtor on or about November 17, 1960 executed and delivered to its attorney at law, Arnold S. Kaye its note in the amount of $46,000.00 for an antecedent debt for attorney's fees which was transferred to Associated Investments of Georgia, Inc. for a note of similar amount from said Associated to said Kaye in order that said Kaye might be secured by reason of a bill of sale to secure debt given on or about January 15, 1960 by debtor to Associated to secure all future indebtedness. That the said note was a portion of the indebtedness listed as due when said foreclosure was made, but that the alleged bankrupt made no attempt to prevent said foreclosure or to have said Kaye note excluded from the security instrument thereby permitting a substantial part of its assets to be transferred, concealed and removed with intent to hinder, delay or defraud its creditors.

By amended answer defendant debtor responded to creditors' amended petition denying all of the substantive allegations.

## THE MOTION FOR SUMMARY JUDGMENT

On July 26, 1961 the petitioning creditors filed motion for summary judgment on the grounds that:

1. The pleadings disclose no genuine issue of fact material to the adjudication of the alleged bankrupt other than whether or not an act of bankruptcy has been committed.

2. The alleged bankrupt has, in open court, admitted the truth of the facts set forth in petitioners' amendment, said amendment having been filed in the office of Referee on April 6, 1961, thereby admitting the commission of the first and second acts of bankruptcy and entitling movants to the judgment of this Honorable Court as a matter of law.

Attached to the motion as exhibit is an affidavit of A. A. Baumstark, an attorney, stating that on July 14, 1961 (date corrected by subsequent amending affidavit to be July 7, 1961) he was present in courtroom and listened to a hearing before the Honorable Frank A. Hooper, Judge of this Court, on a petition for review by Georgia Jewelers, Inc. of orders of the Referee entered in this case; that one of the legal points was whether or not the Referee properly allowed amendments to the involuntary petition; that he heard the Judge ask Arnold S. Kaye, attorney for Georgia Jewelers, Inc. during the argument of said attorney if the facts stated by the petitioning creditors in their amendment to the original bankruptcy petition were true, and that said Kaye answered "yes"; that after said answer the Honorable Judge asked said attorney if he complained only about the manner in which said petitioning creditors had obtained said information set out by them in their amendment, and said Arnold S. Kaye again responded "yes".

By amendment an additional supporting affidavit was filed and offered by moving petitioners. This is the affidavit of James G. Pugh a court reporter stating that he was present in the courtroom of the Honorable Frank A. Hooper on July 7, 1961 at the time when Judge Hooper was hearing argument concerning review of certain orders of the Referee in this case; that while Arnold S. Kaye was presenting argument in behalf of Georgia Jewelers, Inc. he heard Judge Hooper ask attorney Kaye if he disputed the facts stated by the petitioning creditors in their amendment to the original bankruptcy petition or was he complaining of the manner in which the facts were obtained; that Mr. Kaye replied: "No sir, I am complaining about the manner in which they were obtained:", that the Judge then asked if the facts stated by the petitioning creditors in their amendment to the original bankruptcy petition were true, and he heard Mr. Kaye reply in the affirmative.

On July 28, 1961 defendant debtor filed its response to creditors' motion for summary judgment and its own motion for such judgment. This pleading denied the allegations contained in the motion and denied the accuracy and correctness of the affidavit of Mr. Baumstark.

Further responding defendant pointed out that the allegations in paragraphs 6 and 7 of creditors' original petition had been denied under oath by defendant, and that likewise the allegations contained in creditors' amendment had been denied under oath; that all material issues of fact are in dispute and that there has been no evidence introduced of any kind, character, or nature, proving any of the allegations of the original complaint or the complaint as amended.

The response further categorically denied that its counsel ever admitted in judicio any of the material facts involved in the case at bar as alleged in the motion or as set forth in the Baumstark affidavit, which defendant says is not proper, nor accurate and should be disregarded.

The response attaches affidavits of attorney Arnold S. Kaye and affidavits of Marion L. Harbin, president of debtor company and Mrs. D. Erman, vice president and bookkeeper.

The affidavit of Mr. Kaye set forth that he was the attorney for Georgia Jewelers, Inc. in this matter and represented it from the commencement of the litigation, preparing all of the pleadings, handling all legal details and conducting all oral arguments in this matter; that on or about the 14th day of June, 1961 sic he argued certain questions of law before the Honorable Judge Frank A. Hooper; that he did not at any time ever admit that his client, Georgia Jewelers, Inc. did, while insolvent, make payments as alleged in the original or amended complaint; that in the hearings or arguments before the Honorable Frank A. Hooper the question was asked from the bench whether or not payments had been made by the alleged bankrupt as had been itemized in the first purported amend-

ment filed by petitioners, and he stated that since said information had been procured from the books and records of the company that it was very likely correct; that he did not state that such payments had been made while his client was insolvent, nor were any of the remarks from the bench nor any of his replies thereto made or answered relating to whether or not the alleged payments as set forth in the amended complaint were made while the defendant was insolvent; that Judge Hooper did ask whether or not he complained about the manner in which said information was obtained and he stated that he did so complain, but he did not admit that the itemized payments as set forth in petitioner's amendment were made by his client at a time when it was insolvent.

The affidavits of Mr. Harbin and Mrs. Erman set forth as exhibit to each a consolidated balance sheet which each asserts correctly reflects the financial condition and affairs of the company and that said company was solvent on February 28, 1961 and March 1, 1961.

On August 7, 1961 defendant by amendment filed affidavit of James Pugh who had previously attested to affidavit submitted by creditors in support of their motion. This affidavit asserts: that the oral arguments took approximately one hour during which questions of law and fact were discussed in open court, the nature of all the questions and answers not being remembered by him, nor were the proceedings taken down in writing by him; that he is not familiar with the questions of law or fact involved or argued, nor does he recall all of the questions or all of the answers asked by the Court or answered by counsel; that he does not recall the Court ever having asked Mr. Kaye any questions concerning or having anything to do with the solvency or insolvency of Georgia Jewelers, Inc.

Defendants pray that petitioners' motion for summary judgment be denied and that defendants' motion for summary judgment be granted.

### UTILIZATION OF RULE 56

General Order 37 provides that the Federal Rules of Civil Procedure shall be applicable to bankruptcy " * * * in so far as they are not inconsistent with the Act or with these general orders."

Summary judgment procedure under Rule 56 has as its purpose the securing of a just, speedy and inexpensive determination of every case in which no genuine issues of fact appear. This purpose is not generally inconsistent with the Bankruptcy Act or General Orders. In re Yellow Transit Freight Lines, Inc., 207 F.2d 602 (C.C.A.7 1953); Beall v. Pinckney, 132 F.2d 924 (C.C.A.5, 1943); Cohen v. Eleven West 42nd St., Inc., 115 F.2d 531 (C.C.A.2, 1940); 6 Moore's Federal Practice (2d ed.), Para. 56.17 (7). It would seem that summary judgment procedure is as particularly suited to bankruptcy proceedings in the same manner it is in any other civil action.

Therefore, it is the conclusion of this Referee that summary judgment pursuant to Rule 56 may be granted in an appropriate bankruptcy proceeding.

### APPLICATION OF RULE 56

The jurisdictions are in complete agreement that summary judgment may be granted for the movant only when the movant carries forward his burden of clearly showing that there are no genuine issues of material fact and that a formal trial would be needless. See 6 Moore's Federal Practice, Para. 56.15(1). The courts' role in considering the motion for summary judgment is most aptly and ably stated by Judge Donohoe, C. J., in the case of Luria Steel & Trading Corp. v. Ford, D.C., 9 F.R.D. 479, affirmed, 8 Cir., 192 F.2d 880.

"[T]he Court examines evidence on the motion, not to decide any issue of fact which may be presented, but to discover if any real issue exists."

Movant has the charge of establishing a record clearly showing no triable issue of fact, even though the opposing party would have the burden at a formal trial

and presents no opposing affidavits against the motion. See Surkin v. Charteris, 197 F.2d 77 (C.C.A. 5, 1952).

■ Therefore the courts will closely scrutinize the moving party's papers while indulgently and liberally treating the opposing party's papers, affidavits and documents.

■ Admissions on file are included in the list of materials which may be considered on a motion for summary judgment under Rule 56(c), Moore's Federal Practice, Vol. 2, Sec. 56, para. 11.16.

Under Rule 56(c), while admissions to be used should be "on file", the rule allows their establishment in any timely style. Included as a timely means of such establishment are: " * * * from statements of counsel made in oral or written argument." United States Hoffman Machinery Corp. v. Richa, 78 F. Supp. 969, (W.D.Mo., 1948).

Within the caption "proper papers for summary judgment", may be included depositions. Hahn v. Bucyrus-Erie Co. (D.C.E.D.Penn., June 17, 1948), 8 F.R.D. 315.

Accordingly, the employment of depositions in summary judgment procedure is vividly pictured in Town of River Junction v. Maryland Casualty Co. where Judge Sibley speaking for the Fifth Circuit, stated: "That rule (56) contemplates that the judge shall take the pleadings as they have been shaped to see what issues of fact they make, and then shall consider the 'depositions, and admissions on file, together with the affidavits' to see if any such issues are real and genuine. If they are not, judgment is given without further trial." (emphasis supplied). 110 F.2d 278 (C.C.A. 5, 1940).

Failure to allow defendant to take depositions in support of his motion for summary judgment was held *not* to be abuse of discretion where both parties moved for summary judgment and the court had announced its opinion that plaintiff's motion would be granted and that defendant's motion would be denied. Columbia

Fire Insurance Co. v. Boykin & Tayloe, 185 F.2d 771.

In the instant case, Georgia Jewelers, Inc. v. Bulova Watch Co. (C.C.A. 5) 302 F.2d 362, Judge Brown for the Fifth Circuit Court of Appeals said:

"The Bankrupt contends that information may not be used to shore up a defective petition where such detailed information is obtained from books and records in the custody of a Receiver whose appointment ought not to have been made because of the deficiencies of the petition. * * * Apart from the analogy of a § 21, sub. a examination, which we next discuss, we see no impropriety in the full use of factual information ascertained through the opportunity of examining the Bankrupt's records and books in the Receiver's custody even in cases where it is later determined that the resort to a Receiver was improvident. * * * Bankruptcy is indeed a specialized branch of law and jurisdiction, but save in those areas still reserved to specialized treatment under General Order 37 (note 4, supra), it is otherwise subject to the same approach as other civil litigation. The essence of that system, reflected by the Civil Rules, is that pleadings seldom are now the means by which the claim is to be determined, or notice given to the adversary as to what facts might be asserted. That is the function of discovery. * * *

"Use of the books and records as the source of information on which to base amendments was quite permissible. Since the depositions of Creditors and their attorneys and subsequent interrogatories addressed to them were sought to prove a use of books and records which we have just held to be permissible, it was not an abuse of discretion to deny their use here. Thus falls items (e), (h), (l), (m), (n), (o). So far as the proposed depositions might have some other purpose or objective, the orders and actions (h), (m), do not purport to foreclose the matter. Depositions noticed were merely quashed for the present, and time for answering interrogatories was extended to an indefinite

future time. The discovery machinery, flexible and comprehensive as it is, is open to all parties with the greatest of latitude. That includes the Bankrupt. But we simply hold that, aimed as they were toward getting evidence which was quite irrelevant, the Referee did not abuse his discretion by these actions. (h), (l) (m), (n), (o)."

Section 3, sub. d of the Act of Bankruptcy seems to contemplate the deposition procedure employed in this matter.

Section 3 "(d) [w]henever a person against whom a petition has been filed alleging the commission of the second, third, or fifth act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appear in court on the hearing, *and prior thereto if ordered by the court*, with his books, papers, and accounts, and submit to an examination and give testimony as to all matters ending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him."

Although consideration must be given to the need for cross-examination, demeanor testimony, access of proof to both parties, and the complexities of the case there exists ample authority for the principle that summary judgment does not deprive a losing party of his right to a jury trial.

In support of the principle that "if the only question is one of law and there is no dispute as to material issues of fact, there is no room for a contention by losing party that the granting of a motion for summary judgment deprives it of a jury trial". See Lindsey v. Leavy, 149 F.2d 899 (C.C.A.9, 1945)

1. 6 Moore's Federal Practice, Para. 56.15(1), (3) and Para. 56.22.
See also Port of Palm Beach Dist. v. Goethals, et al., 104 F.2d 706, (C.C.A. 5, 1939).

To determine if summary judgment should be entered it is necessary first to analyse and see what proofs are required for such judgment, and on which of these components of required proof genuine issues may exist.

These components may here be enumerated:

1. Does the Court have jurisdiction?
2. Is the alleged bankrupt a proper party subject to involuntary adjudication?
3. Are the petitioning creditors proper parties and creditors holding claims of the required amounts?
4. Has an Act of Bankruptcy been committed?
5. Was the debtor solvent or insolvent at the time the alleged acts occurred?

In this order there will be discussed what material issues between the parties remain as to each of these five components from a consideration of the record.

### 1. JURISDICTION

■ In their original petition petitioners alleged:

"2. Said Georgia Jewelers, Inc. has had its principal place of business at No. 6 Broad Street, S. W., in the county of Fulton, State of Georgia, within the above judicial district, for the six months immediately preceding the filing of this petition."

In its answer the debtor admits this allegation.

Thus no issue remains as to this element.

### 2. PROPER PARTY?

■ Petitioning creditors allege in their original petition:

"1. Georgia Jewelers, Inc. is a business corporation organized and existing under the laws of the State of Georgia, and is not a municipal, railroad, insurance or banking corporation, or a building and loan association."

Since this paragraph was admitted by defendant's answer and since creditors' petition alleges a party who may be adjudicated a bankrupt, as described in Section 4, sub. b there is no issue on this.

## 3. ARE PETITIONING CREDITORS PROPER PARTIES?

Section 59, sub. b of the Bankruptcy Act provides:

"Three or more creditors who have provable claims liquidated as to amount and not contingent as to liability against any person which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over, or, if all of the creditors of such person are less than twelve in number, then one or more of such creditors whose claim or claims equal such amount, may file a petition to have him adjudged a bankrupt."

Although Paragraph 5 of creditors' petition, which alleges that the petitioners are creditors holding claims in certain named amounts, is denied as alleged by defendant's answer, Paragraph 16 of the answer avers:

"At the time of the filing of the complaint by the petitioning creditors, this defendant alleges as an affirmative fact that the only sums due each of the creditors bringing this complaint were as follows:

| | |
|---|---|
| Bulova Watch Co. (approx.) | $3,000.00 |
| Columbia Diamond Ring Co. (approx.) | 4,000.00 |
| Gruen Watch Co. | 1,700.00 |
| Golden Shield Corporation | 3,183.00 |

any additional sums owed any of said petitioners were represented by promissory notes which were not yet due at the time of the filing of the complaint."

Thus the amounts admitted as owing being in excess of the sum required by Section 59, sub. b no issue could remain on this element.

## 4. HAS AN ACT OF BANKRUPTCY OCCURRED?

Movants rely upon certain alleged admissions in judicio made by debtor's counsel during a hearing before the Honorable Frank A. Hooper. Affidavits from Mr. James Pugh, a court reporter, and Mr. A. A. Baumstark, an attorney, both of whom were in courtroom and not participating in the proceeding were submitted. It is contended that these admissions establish proof of the commission of the Acts of Bankruptcy alleged. In opposition to this contention defendant's counsel submitted another affidavit from Mr. Pugh to the effect that he did not recall the Court asking Mr. Kaye questions concerning the solvency or insolvency of Georgia Jewelers, Inc. Mr. Kaye also offered his own affidavit denying that he had admitted the commissions of the acts by defendant while it was insolvent. From these affidavits and from the tenor of Mr. Kaye's affidavit it is deemed that admission was made by defendant's counsel of the transfers and transactions alleged in creditors' original and amended petition but reserved in his admissions the question of the solvency or insolvency of his client at the time such transfers and transactions occurred.

More specifically defendants counsel is deemed to have admitted all essentials of the second act of bankruptcy except insolvency at the time of the commission of such transfers.

Section 3 of the Bankruptcy Act defines this second act as follows: "Acts of bankruptcy by a person shall consist of his having * * * (2) made or suffered a preferential transfer, as defined in subdivision (a) of section 60 of this Act."

Section 60, sub. a(1) defines a preference as follows:

"A preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

The allegations of creditors petition as amended alleges 62 transfers as preferences committed by defendant. Defend-

ant counsel's admissions are deemed to have admitted all essential acts with respect to such transactions except the insolvency of debtor at the time of such transfers. The matter of the solvency or insolvency of debtor will be dealt with in the next subtitle herein. The resulting consequences of the transfers from the record in this case is obvious.

As to the other act of bankruptcy alleged concerning the concealment and removal of its assets and transfers fraudulent under the provisions of Sections 67 or 70 of the Act. While the record strongly supports the allegations, the Referee considers that the record may not be free from some issues of fact as to some of the essential elements necessary to establish the commission of this first act of bankruptcy.

## 5.  SOLVENT OR INSOLVENT?

Defendant filed with his response affidavits of Marion L. Harbin, President of the company, and Mrs. D. Erman, its Vice-President and bookkeeper, each affidavit having attached to it a balance sheet styled "Georgia Jewelers, Inc. consolidated Balance Sheet February 28, 1961." The affidavits verified the statement as being true and correct as taken from the books and records of the corporation.

There appears among the records of this case transcript of testimony at great length of these same two affiants regarding the solvency or insolvency condition of the company.

According to the testimony of Mrs. Erman the accounts receivable due defendant company include the following:

| | |
|---|---|
| See George, Inc. (R10–27–61, P. 29) | $67,839.98 |
| Buhl Optical Co. (R10–27–61, P. 24–26) | 33,800.41 |
| Bostwick Jewelers, Inc. (R10–27–61, P. 29) | 2,054.90 |
| Royal Jewelers (R10–27–61, P. 30) | 3,974.46 |
| American Credit Service (10–27–61, P. 31) | 65,000.00 and |
| | 19,464.91 |

———◆———

From the testimony of the bookkeeper, Mrs. Erman, it is clear that the See George, Inc. receivable item is not properly an asset to be considered. From her testimony of October 27, 1961 at page 29 it appears that the assets of this company were foreclosed upon by Talcott and by Associated Investments. Furthermore (R11–14–61, P. 29 & 30) since all of the assets of this company were included in the consolidated balance sheet submitted there would be no remaining assets of See George, Inc. from which this receivable item could be realized.

This same situation apparently exists as to the Buhl Optical Co. receivable of $33,800.41 (R. 10–27–61, P. 23; R11–14—61 P. 29, 30) and Bostwick Jewelers, Inc. of $2,054.90 (R10–27–61, P. 29; R. 8–10–61, P. 140).

The receivable of Royal Jewelers in the sum of $3,974.46 obviously is of no value since it is no longer in business and assets if any reverted back to Georgia Jewelers. (Mrs. Erman R–10–27–61, P. 29, 30; Harbin 8–10–61 P. 94, 98).

The claimed asset item (R. 10–27–61, P. 31) of American Credit Service, Inc. of $65,000.00 in See George should, we think, be eliminated for the reasons stated above relating to See George, Inc. Likewise another receivable from the same American Credit Service in the sum of $19,464.91 should not be allowed for the reason that a loss of $41,020.29 for 1959 was shown (R11–20–61, P. 24) with tax returns for 1958 showing assets $19,808.00, liabilities $57,000.00, for 1959 assets $19,514.44 and liabilities $97,000.00, and no tax return filed for 1960. (R11–20–61, P. 22, 30) apparently there is no prospect of realization. The total of the above items is $192,134.66, which if subtracted from defendant's figure would show accounts receivable $558,310.48.

By a subtraction of the total of these above enumerated items plus the sum of $1,107.74 co-op advertising and H.S.D. & G. $6,610.65 receivables from the total accounts receivable shown in defendant's consolidated balance sheet viz, $750,445.-14 the sum of $550,592.09 is obtained, which amount, we think, could be correctly assumed to represent the total of retail accounts receivable. Mr. Harbin stated that 40 to 50 per cent of these accounts were turned over for collection (R11–14–61, P. 57) upon 50 per cent. Collection charge arrangement, (Mrs. Erman 10–27–61, P. 42) Forty percent of these accounts total $220,236.83. If all of such accounts were collected the costs of collection would amount to $110,118.-42.

There is testimony however indicating a far less value of these accounts. There had been instances in the past when debtor purchased accounts, $336,895.00 for $158,430.07 with $85,658.80 charged off; (R10–26–61, P. 120, 126) $134,440.-10 purchased for $38,875.00; (R10–27–61, P. 52, 55; R11–14–61, P. 81) $325,-000.00 worth for $180,000.00 (R11–14–61, P. 80, 81).

Mr. Harbin had valued LeMas accounts in a hearing previously as worth 20 per cent if collected on premises (R11–14–61, P. 54) Leonard Bernes gave a similar valuation. (R11–26–61, P. 38). The accounts were installment accounts averaging balances of $40. to $50. payable over periods of 10 to 12 months but represented a little better class of people than the LeMas accounts. (R11–14–61, P. 35, 40, 56, 73, 75, 76, 77) Commenting at a Board of Directors Meeting on November 1, 1960 Mr. Harbin, the president, spoke of the distressed condition of the accounts. (R10–27–61, P. 50) Mrs. Thompson of Associated Investments who had foreclosed and acquired the accounts wrote to its attorney on June 14, 1961, " * * * the collections are not only very poor, but the delinquency picture is frightening. The accounts are mostly colored, the sales were generated by actually pulling people off the windows, and this is a specialized type of credit business that Mr. Harbin understands, but very few credit jewelers operate in this manner." (R11–16–61, P. 124, 125)

It might be noted here that all of the assets of defendant debtor were bought in at the foreclosure sale, subject to liens of Talcott in the amounts of $100,000.00 to $125,000.00 for the following sums: Atlanta assets $110,000.00; Marietta $19,000.00 and Columbus $54,000.00. (R11–16–61, P. 74, 76) Total $183,000.-00.

## NOTES RECEIVABLE

The notes receivable reflected in the consolidated balance sheet according to the bookkeeper (affiant Mrs. Erman R10–27–61, P. 23) are Georgia Jewelers Corporation $54,017.40 and Becker, Inc., $137,560.33.

Georgia Jewelers Corporation had no particular place of business; no books were ever set up; Mrs. Erman was an officer but had so many books and transactions that she couldn't possibly remember all of them; no assets of Georgia Jewelers Corporation is indicated as all dealings appear to be washed transactions (R10–27–61, P. 6, 11)

Becker, Inc. notes evidence sales of assets of Georgia Optical Co. in the sum of $111,818.65, Gray's Optical Dispensary in the sum of $16,974.85 and See George, Inc. in the sum of $13,766.93 to Becker, Inc., November 2, 1960 payable $500.00 weekly notes now in hands of Talcott with no known credits of any payments, (R10–27–61, P. 22) On the same date, November 2, 1960, same attorney organized Optronics, Inc. and assets of Becker, Inc., transferred to Optronics, Inc. for 50 per cent of common stock and preferred stock of Optronics, Inc., the other 50% being issued to George Zeidwig (R11–15–61, P. 83, 4) without any consideration other than his agreement to manage.

On October 21, 1961 Optronics Corporation of America was formed and the assets of Optronics, Inc. were sold for $70,-000.00 of which $35,000.00 was paid in cash to Optronics, Inc. and $35,000.00

note of Optronics Corporation of America. The $35,000.00 cash was used to pay other creditors of Optronics, Inc., but not upon this note. (R11–15–61, P. 114) The only remaining asset of Optronics, Inc. is the $35,000.00 note which is the maximum that could be expected to be realized, a reduction of $102,560.33.

It is clear to this Referee that from the depositions of the two officers of debtor company, the two affiants who attached the balance sheet to their affidavits, that the said balance sheet is incorrect. Such determination has been reached from their testimony and admissions about the above enumerated items on which there is no denial or dispute. The contents of the depositions are taken in the light most favorable to defendant and it has been given the benefit of every doubt. Only the accounts receivable and notes receivable are dealt with in our computations:

If the above enumerated accounts receivable are diminished by eliminating the receivable included from their defunct subsidiaries the total sum would be $558,310.48 according to the Referee's calculation. Subtracting the further sum of $7718.39 of other receivables not specifically deducted or classified, the sum of $550,592.09 is obtained as being the total of retail installment sales accounts. If 40% of these retail accounts are put out for collection at a cost of 50% of the amount collected, assuming that 100% of all accounts are collected, the resulting cost would be $110,118.42. This figure could be used to diminish the receivables further to the sum of $448,192.06, or the more reasonable and practical reduction of a 20 per cent valuation as estimated by Mr. Harbin and Mr. Bernes could be used to reduce the value of the receivables to $117,836.81.

The notes receivable have been reduced to $35,000.00.

There are other items in defendant's statement which are questioned:

The item of cash of $6,473.24 appears in reality to be an overdraft. (R10–27–61, P. 31, 36) It is left undisturbed however because of the testimony of Mrs. Erman about her $5,000.00 deposit in bank.

The item other assets appears to involve a procedure for offsetting past due bills for services by setting up a purported "reserve". (R10–27–61, P. 44, 49) While it is difficult to see how a debt for services already rendered and past due can be entered also as an asset by approved accounting practices this item is left undisturbed as being most favorable to defendant. Furthermore the inclusion or exclusion of this item will not effect the ultimate solvency results on the balance sheet calculations hereinafter made.

The items of inventory, equipment and other property and the liabilities, although questioned by creditors, have been accepted for the purpose of this motion only as being correct and as representing figures most favorable to the defendant.

Comparison and contrast is attempted in the following consolidated balance sheet submitted with the affidavits of the two company officers and the balance sheets projected by the foregoing write offs of valuations of the accounts and notes receivable. Under one projection where the receivables of inter-company and defunct company receivables were written down and from the remaining there was subtracted the costs of collection stated, and allowing 100 per cent collection, the net worth calculation showed a deficiency of $84,289.36. If less than 100 per cent is collected, which is most logical and reasonable to assume then the deficiency would be increased by 50% of uncollected items.

In the other projection where a more reasonable approach to value of the receivables is made, that is a value of 20 per cent of face value, a deficiency of assets over liabilities is shown to be $414,644.61.

The comparison and contrast of these projections with defendant's consolidated balance sheet follows, viz:

### Georgia Jewelers Inc
### Consolidated Balance Sheet
#### February 28, 1961

| ASSETS | AS SHOWN BY Defendant's STATEMENT ATTACHED TO AFFIDAVITS of Mrs. D. ERMAN, AND MARION L. HARBIN | AFTER DEDUCTION of UNALLOWABLE ACCOUNTS AND NOTES RECEIVABLE AND DEDUCTING COST of Collection INCOME TAX RESERVE ELIMINATED, RETAIL ACCOUNTS Allowed as 100% Collectible | AFTER DEDUCTION of UNALLOWABLE ACCOUNTS AND NOTES RECEIVABLE AND VALUING RETAIL ACCOUNTS AT 20% of FACE- RESERVE FOR INCOME TAX ELIMINATED |
|---|---|---|---|
| **CURRENT ASSETS** | | | |
| CASH | 6,473.24 | 6,473.24 | 6,473.24 |
| Accounts Receivable | 750,445.14 | 558,310.48 | 117,836.81 |
| Notes Receivable | 191,577.73* | 35,000.00 (cost of Collection Receivable) | 35,000.00 |
| Allowance For Bad Debts | 71,800.00 | 110,118.42* | NONE |
| Inventory Merchandise | 294,531.33 | 294,531.33 | 294,531.33 |
| Inventory Optical | 36,060.33 | 36,060.33 | 36,060.33 |
| Stocks - Bostwick | 27,200.00 | 27,200.00 | 27,200.00 |
| | $1,234,487.77 | 847,456.96 | 517,101.71 |
| **EQUIPMENT** | | | |
| Furniture and Fixtures | 83,476.91 | 83,476.91 | 83,476.91 |
| Neon Signs | 14,161.03 | 14,161.03 | 14,161.03 |
| Air Conditioning | 16,593.15 | 16,593.15 | 16,593.15 |
| Deposits | 65.00 | 65.00 | 65.00 |
| Leasehold Improvements | 11,782.00 | 11,782.00 | 11,782.00 |
| Automobiles | 9,344.44 | 9,394.44 | 9,394.44 |
| Allowance For Depreciation | 66,007.66* | 66,007.66* | 66,607.66* |
| | 69,465.46 | 69,465.46 | 69,465.46 |
| OTHER ASSETS | 40,597.56 | 40,597.56 | 40,597.56 |
| | $1,344,550.79 | $957,519.98 | $627,164.73 |

### LIABILITIES

| **CURRENT LIABILITIES** | | | |
|---|---|---|---|
| Loans Payable | 153,921.44 | 153,921.44 | 153,921.44 |
| Notes Payable | 391,728.46 | 391,728.46 | 391,728.46 |
| Notes Payable 8% | 111,054.29 | 111,054.29 | 111,054.29 |
| Accounts Payable | 310,023.39 | 310,023.39 | 310,023.39 |
| | 966,727.58 | 966,727.58 | 966,727.58 |
| **DEFERRED LIABILITIES** | | | |
| State Sales Tax | 12,899.20 | 12,899.20 | 12,899.20 |
| Federal Excise Tax | 24,441.19 | 24,441.19 | 24,441.19 |
| Notes Payable - Long Term | 37,741.37 | 37,741.37 | 37,741.37 |
| | 75,081.76 | 75,081.76 | 75,081.76 |
| Total Current & Deferred Liabilities | $1,041,809.34 | $1,041,809.34 | $1,041,809.34 |
| Reserve For Income Tax | $101,572.05 | NONE | NONE |
| **NET WORTH** | | | |
| Capital Stock - Common | 11,250.00 | 11,250.00 | 11,250.00 |
| Capital Stock - Preferred | 254,000.00 | 254,000.00 | 254,000.00 |
| Surplus | 33,740.36 | 33,740.36 | 33,740.36 |
| Net Profit To Date* | 97,820.96* | 383,279.72* | 213,634.97* |
| | 201,169.40 | 84,289.36* | $414,644.61* |
| Total Liabilities | $1,344,550.79 | $957,519.98 | $627,164.73 |

\* INDICATES RED Figures

ON DEFENDANTS Balance submitted There Appears The Following: FILES Its Income Tax on The Installment Sales Basis of Accounting. On Installment Sales ARE subject To Income Tax only As such sales ARE made on the Accural BASIS. The 101,572.05 shown As Reserve Income Tax in reality is not A Liability.

NOTE: This company on This Basis, Profit, are collected. AT This Time the Statements

Insolvency is defined in the Bankruptcy Act (Section 1 (19) as follows:

"A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts;"

Thus excess of liabilities over assets at a fair valuation is the test of insolvency in bankruptcy proceedings (Collier Bankruptcy Manual Sec. 1.09)  The liabilities scheduled by defendant in its proffered consolidated balance sheet have been accepted as being those most favorable to defendant's position and have been accepted in the foregoing calculations except that defendant has been further favored with the elimination of $101,572.05 Reserve for Income Tax.  Thus the correct determination of solvency position hinges upon the fair valuation of the receivables claimed as its principle asset. This value has been considered as part of a "going concern" and given the 20 per cent collectable valuation attributable by the expert testimony of defendant's president and Mr. Bernes, although the business was apparently already defunct and closed out (See and compare Matter of Nathanson Bros. Co. (C.C.A. 6), 64 F.2d 912; Mitchell v. Investment Securities Corp. (C.C.A. 5) 67 F.2d 669; Langham, Langston & Burnett v. Blanchard, (C.C.A. 5) 246 F.2d 529; Daniels & Fisher Stores Co. v. Gregg (C.C.A. 8), 9 F.2d 43; In re Cooper, 1 Cir., 12 F.2d 485)

From the record on all items not in dispute or issue and resolving all doubts in favor of the defendant it must be determined that the defendant was insolvent on the pertinent dates in question. It is notable perhaps that $9,000.00 of these transfers was to Optronics, Inc. and $2,300.00 to Optronics Corp.  Even if this should enhance correspondingly the value of the Becker, Inc. notes receivable, it would not overcome the insolvency result.

Having determined this insolvency and having determined that from admissions of counsel and from the entire record as well, that the second act of bankruptcy was committed as alleged the defendants motion for summary judgment as respects this second act of bankruptcy is granted.  As to the first act of bankruptcy alleged it is denied.

Defendant's counter motion for summary judgment and its continuing motion to dismiss, if still insisted upon, are denied.

Thus having determined that at least one act of bankruptcy was committed by defendant, it is hereupon considered and

Ordered and adjudged that the said Georgia Jewelers, Inc. is a bankrupt under the Act of Congress relating to bankruptcy.

At Atlanta, Georgia this 9th day of August, 1962.

On petition for review

MORGAN, District Judge.

On March 16, 1961, four creditors of Georgia Jewelers, Inc., filed involuntary petition in bankruptcy, seeking adjudication of this debtor.  On July 26, 1961, these petitioning creditors filed a motion for summary judgment, said motion being granted by the Referee on August 9, 1962, as to the second Act of Bankruptcy.  As to the first alleged Act of Bankruptcy, the Referee had some reservations that the record may not be free from some issues of fact as to some of the essential elements necessary to establish the commission of this first Act of Bankruptcy, that is, making a preferential transfer as is defined in Subdivision a of Section 60 of the Bankruptcy Act. The bankrupt thereupon filed in this court a petition for review on August 28, 1962.

In its petition for review, the bankrupt has listed the points and errors upon

which it intends to rely, those being as follows:

1. That the order of the Referee in this case was void in any instance, since the bankrupt had an absolute right to trial by a jury;

2. That the granting of a summary judgment in this case was improper, since there were one or more material issues of fact disputed by the evidence; and,

3. That the order of the Referee in this case was void in any instance, since the right to certain discovery procedures were denied to the bankrupt.

The motion setting forth objections to the certificate upon petition for review, filed by the bankrupt in this court on September 7, 1962, is hereby denied inasmuch as the Court is of the opinion that sufficient information has been forwarded by the Referee to permit a logical and thorough study of the points in question. Further, the Court is taking it upon itself to consider the *entire* file; so, actually, no need arises for the insistence upon the aforementioned motion.

The order of the Referee granting the motion for summary judgment is specific and analyzes quite well the legal issues involved. Therefore, this Court will not go into any great detail but will confine the discussion to the legal points raised by the petition for review.

■■■ The Court will consider first the question of whether once the bankrupt has made a timely demand for trial by a jury on certain issues, are the petitioning creditors precluded from thereafter seeking and obtaining summary judgment, even if there would be adequate grounds on which to grant such summary judgment had not the demand for jury trial been made. The bankrupt in fact contends that its right to a jury trial is "absolute", and that a granting of summary judgment is error even where no material issue of fact exists. Obviously, the right to a jury trial on certain issues exists only when there are actual issues to be tried. If, on a motion

for summary judgment, it is determined that there is no material issue of fact, then only questions of law remain and trial by jury is not only unnecessary, it would be an invasion of the province of the Judge who is the sole arbiter of matters of law.

■■■ The Fifth Circuit has repeatedly recognized that the so-called "absolute right" of trial by jury is not violated by the summary judgment proceeding. Cunningham v. Securities Investment Co., 278 F.2d 600; Whitaker v. Coleman, 115 F.2d 305. In the Whitaker case, the Court carefully pointed out that the purpose of the summary judgment proceeding is not to cut litigants off from any right they might have to trial by jury, but, instead, the purpose is to carefully test out if there is really any evidence which would entitle them to such right. Also, in this case, the bankrupt attempted to have the matter disposed of summarily in its behalf, thus raising serious questions that even if an "absolute" right to trial by jury existed, it has, in fact, been waived by this election in joining in and acceding to every step of the proceeding incident to the summary judgment. The Court, therefore, can see no validity whatever to this contention of the bankrupt.

■■■ The Referee has concluded that no material issue of fact exists and, accordingly, has adjudicated the bankrupt pursuant to the Bankruptcy Act. Unless otherwise directed in the order of reference, the report of a referee shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. General Orders in Bankruptcy, Order No. 47. In re Gibralter Amusement, Ltd., 2 Cir., 291 F.2d 22; In re Gibralter Amusement, Ltd., 187 F.Supp. 931. A thorough reading of the entire file has convinced the Court that the findings of the Referee could in no sense be said to be clearly erroneous.

■■■ The bankrupt next contends that the summary judgment rendered in this case was not proper because of the fact

that it was denied the right to certain discovery procedures. In Paragraph 14 of the bankrupt's petition for review, it is alleged that the order of the Referee on April 7, 1961, was erroneous. This order prohibited the bankrupt from taking depositions and interrogatories at any time during the proceeding, and this same order has been held by this Court and the Fifth Circuit Court of Appeals to be an appropriate one.

In Georgia Jewelers, Inc. v. Bulova Watch Company, et al., 5 Cir., 302 F.2d 362, the Court, which had before it for consideration a multitude of objected-to orders and motions, designated the Referee's order of April 7, 1961, by referring to it as Item "(h)". In discussing this order, the Court said:

> "Use of the books and records as the source of information on which to base amendments was quite permissible. Since the depositions of Creditors and their attorneys and subsequent interrogatories addressed to them were sought to prove a use of books and records which we have just held to be permissible, it was not an abuse of discretion to deny their use here. Thus falls items (e), (h), (l), (m), (n), (o). So far as the proposed depositions might have some other purpose or objective, the orders and actions (h), (m), do not purport to foreclose the matter. Depositions noticed were merely quashed for the present, and time for answering interrogatories was extended to an indefinite future time. The discovery machinery, flexible and comprehensive as it is, is open to all parties with the greatest of latitude. That includes the Bankrupt. But we simply hold that, aimed as they were toward getting evidence which was quite irrelevant, the Referee did not abuse his discretion by these actions."

Since the quashing of the interrogatories and the depositions, the bankrupt has attempted to avail itself of no further discovery procedures. It seems to the Court that the failure to even attempt to avail itself of further discovery proceedings should preclude its objecting to the granting of summary judgments under any theory that a right has been denied it. Its failure to avail itself of discovery in areas where discovery might have been proper is destructive of any contention on this issue. Schneider v. McKesson & Robbins, Inc., 254 F.2d 827.

The order of the Referee in Bankruptcy granting the motion of the petitioning creditors for summary judgment and adjudicating the bankrupt pursuant to the Bankruptcy Act is affirmed.