SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

ARKANSAS LOAN & THRIFT CORPO-
RATION, an Arkansas corporation;
United Loan & Investment Company,
an Arkansas corporation; Savings Guar-
anty Corporation, an Arkansas corpo-
ration; Ernest A. Bartlett, Hoyt Borum,
Afton Borum, Defendants.

No. FS–68–C–9.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Jan. 22, 1969.

Robert F. Watson, Fort Worth, Tex., for S.E.C.

Sam Sexton, Jr., Fort Smith, Ark., for movants.

## OPINION

JOHN E. MILLER, Senior District Judge.

On December 27, 1968, Ernest A. Bartlett, Jr., Joe Lee Anderson, E. M. Clem, Gaylord B. Roberson, Joe D. Jeryo, Nyle B. Oswalt, Afton A. Borum, Ralph C. Ingram, Pete Wells, Paul A. Michler, Leslie D. Humphrey, Lawrence T. Davis and Hoyt Borum filed the following motion:

"Movants, for their motion, respectfully state:

"1. The Movants are persons affected or bound by orders of the court in the captioned proceedings.

"2. This court has heretofore ordered Arkansas Loan and Thrift Corporation placed in Receivership and in addition has ordered the Receiver to liquidate the corporation. In addition thereto, the court has orally declared from the bench that there can be no doubt that the corporation is insolvent.

"3. In response to directions from the court the Receiver has filed a number of suits and has retained counsel and accountants and done other things and matters, all in an effort to liquidate the corporate entities.

"4. This court is wholly without jurisdiction to order liquidation of the corporations by the Receiver, and all of the actions taken by the Receiver in an attempt to liquidate the corporations are without authority of law. The only permissible method for the liquidation of the corporations is by reference to bankruptcy and by liquidation by a trustee in bankruptcy under the supervision of the Referee in Bankruptcy.

"WHEREFORE Movants pray that the Receivership heretofore ordered by this court be vacated and that this cause be referred to the Referee in Bankruptcy for the appointment of a Trustee in Bankruptcy and for the liquidation of the corporations in an orderly and lawful manner."

The movants, through their attorney, served and submitted a memorandum brief in support of the motion, and on January 10, 1969, the plaintiff, SEC, through its attorneys submitted a memorandum brief in opposition to the motion. Oral arguments were heard on January 14, 1969, and at the conclusion thereof the court announced that the motion would be taken under advisement and the parties notified of the conclusion reached by the court.

The court file is voluminous, consisting of pleadings, other proceedings, orders entered by the court in aid of the liquidation of the involved corporations.

A brief resume of the proceedings are necessary to understand the issues involved.

On March 11, 1968, the plaintiff filed its complaint containing two counts, in which it alleged that the defendants "have engaged and are engaging in acts and practices which constitute and will constitute violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933, as amended [15 U.S.C. 77e(a) and 77q(a)], the plaintiff, pursuant to Section 20(b) of the Securities Act of 1933, as amended [15 U.S.C. 77t(b)], brings this action to enjoin such acts and practices."

Jurisdiction was alleged to exist under Section 22(a) of the Securities Act

of 1933, as amended [15 U.S.C. § 77v (a)].

The defendant Arkansas Loan & Thrift Corporation (AL&T), of Van Buren, Arkansas, was organized in 1964 as an Arkansas corporation for the purpose of engaging in the consumer finance business. Savings Guaranty Corporation (Savings), an affiliate of AL&T, was acquired by AL&T in 1965 for the purpose of guaranteeing securities issued by AL&T. United Loan & Investment Company, a wholly owned subsidiary of AL&T (United), was granted a Certificate of Authority by the State of Arkansas in 1937 to offer evidence of indebtedness to the public. AL&T has used this Certificate of Authority of United in issuing bond investment certificates to the public. The certificates bear the statement: "United Loan & Investment Company, a division of Arkansas Loan & Thrift Corporation."

The defendant Ernest A. Bartlett became chairman of the board of directors of AL&T in April 1965 and continued in that position until December 1967, and is a trustee of Savings.

Hoyt Borum became president of Savings at the time it was acquired by AL&T and remained as its president until June 1967, and is presently a director and manager of AL&T, and is a trustee of Savings.

The defendant Afton Borum became president of AL&T in May 1966 and continues in that capacity. He is also a trustee of Savings.

The complaint further alleged that the defendants have been and are now offering for sale, selling and delivering after sale securities, namely, notes and evidences of indebtedness (characterized by defendants as "bond investment certificates") and in the offer for sale and sale of such securities have been and are now directly and indirectly making use of means and instruments of transportation and communication in interstate commerce and of the mails.

No registration statement with respect to the securities issued by defendants had been filed or is in effect with the SEC.

In offering and selling the bond investment certificates, the defendants prepared or caused to be prepared and used numerous brochures, pamphlets, newspapers, magazines, television and radio advertisements, and thus caused such advertisements to be sent or broadcast to purchasers and prospective purchasers in states other than Arkansas.

In the first paragraph of Count 2 the plaintiff alleged:

"Since January of 1965 the defendants, Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation, United Loan & Investment Company, Ernest A. Bartlett, Hoyt Borum and Afton Borum, have been and are now selling securities, namely, common stock of AL&T and notes and evidences of indebtedness of United and AL&T, and in the sale of such securities have been and are now, directly and indirectly, by use of means and instruments of transportation and communication in interstate commerce and of the mails, employing a device, scheme and artifice to defraud, and have obtained and are obtaining money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, and have engaged and are engaging in transactions, practices and courses of business which operate and would operate as a fraud and deceit upon purchasers of said securities, all as more fully described as follows:"

Following the above allegation the plaintiff sets forth various acts that were performed by the defendants in the operation of the business.

It was also alleged that as a further part of such scheme and artifice to de-

fraud the defendants, in the course of business made numerous fraudulent and deceitful oral statements. Then follows an itemized list of such oral statements.

In connection with the statements set forth and referred to, it is alleged that the defendants omitted to state material facts necessary to make the statements true in the light of the circumstances under which they were made not misleading. Then follows an allegation of the various omissions by the defendants.

The plaintiff prayed for the issuance of a preliminary injunction and final judgment restraining the defendants, their officers, directors, agents, servants and employees from the offer and sale of said securities unless and until a registration statement is in effect with the SEC; also, prohibiting the use of instruments of transportation or communication in interstate commerce.

The plaintiff further alleged that the defendant corporations are now insolvent, and that the continuation of the acts and practices of the defendants will result in immediate and irreparable injury to the purchasers and future purchasers of the securities; that it is essential that a receiver be appointed to marshall and preserve the assets of the defendants and prevent any inequitable distribution of its funds; to immediately take possession of the property belonging to or in the possession of the defendants, and said Receiver be empowered and directed to collect, take charge of all and singular and hold the same subject to the further orders of the court.

The motion for preliminary injunction was supported by a statement by William G. Reynolds, a certified and licensed public accountant, who had been employed by AL&T in September 1967 to examine the books and records of that company, and various affidavits and exhibits.

In the order for production of documents entered on March 11, 1968, the court directed the defendants to "make available to plaintiff's attorneys instanter" all the books, records, and other documents of AL&T in its possession, together with the work papers in possession of accountants employed by AL&T and pertaining to its financial condition as of December 31, 1967.

After a hearing on March 13, 1968, the court was of the opinion that the relief prayed for in plaintiff's complaint and motion for preliminary injunction and appointment of a Receiver was appropriate, and a preliminary injunction was entered. In the order granting the preliminary injunction the court stated that a Receiver would be appointed within 48 hours, and the defendants were restrained from any action whatsoever concerning the assets of the corporations.

On the next day, March 14, 1968, the court entered an order appointing Lem C. Bryan of Fort Smith, Arkansas, as Receiver. The order provided:

"(1) That Lem C. Bryan be and he hereby is appointed receiver of the defendants, Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation and United Loan & Investment Company, and of all the properties of the said defendants, real and personal, of whatever kind and description;

"(2) That the said receiver forthwith file with the clerk of this court a bond in the sum of $25,000.00 with sureties to be approved by the court, conditioned that he will well and truly perform the duties of his office and duly account for all moneys and properties which may come into his hands and abide by and perform all things which he shall be directed to do;

"(3) That until the further order of this court the said receiver be and he hereby is authorized forthwith to take and have complete and exclusive control, possession and custody of all the assets and property of the defendants Arkansas Loan & Thrift Corpo-

ration, Savings Guaranty Corporation, and United Loan & Investment Company.

"(4) That the said defendants and any persons acting under their direction shall upon presentation of a certified copy of this order deliver to the receiver any and all properties of the defendants Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation, and United Loan & Investment Company, real or personal, in their possession or under their control; and that all persons are enjoined from in any way disturbing the possessions of the receiver and from prosecuting any actions which affect the property of said defendants;

"(5) That the said receiver be and he hereby is authorized to continue, manage and operate the business of the defendants, until the further order of this court, with full authority to carry on, manage and operate the said business, to buy and sell merchandise, supplies or stock in trade for cash or on credit and as may be deemed advisable by such receiver;

"(6) That the said receiver be and he hereby is authorized in his discretion to employ such managers, agents, employees, servants, accountants, and attorneys as may in his judgment be advisable or necessary in the management, conduct, control or custody of the affairs of the defendants and of the assets thereof, and that said receiver be and he hereby is authorized to make such payments and disbursements as may be needful and proper for the preservation of the properties of the defendants, including the authority to make payments of debts entitled to priority;

"(7) That said receiver be and he hereby is authorized to receive and collect any and all sums of money due or owing to the defendants in any manner whatsoever, whether the same are now due or shall hereafter be-

come due and payable, and said receiver be and he hereby is authorized to do such things and enter into such agreements in connection with the management, care and preservation of the properties of the defendants as he may deem advisable, and is authorized to incur such expenses and make such disbursements as may in his judgment be advisable or necessary in connection with the care, preservation and maintenance of the said properties;

"(8) That the said receiver be and he hereby is authorized to institute, prosecute and defend, compromise, adjust, intervene in or become party to such actions or proceedings in state or federal courts as may in his opinion be necessary or proper for the protection, maintenance and preservation of the assets of the defendants or the carrying out of the terms of this order, and likewise to defend, compromise or adjust or otherwise dispose of any or all actions or proceedings instituted against him as receiver or against the defendants and also to appear in and conduct the defense of any suit or adjust or compromise any actions or proceedings now pending in any court by or against the defendants where such prosecution, defense or other disposition of such actions or proceedings will in the judgment of the said receiver be advisable or proper for the protection of the properties of the defendants."

On April 2, 1968, the defendants filed their answer specifically denying the material allegations of the complaint, and praying:

"WHEREFORE, PREMISES CONSIDERED, AL&T, SAVINGS, UNITED, BARTLETT, HOYT BORUM and AFTON BORUM pray that upon a final hearing hereof the preliminary injunction heretofore granted be dismissed, the receivership of AL&T, SAVINGS and UNITED be dissolved, and for such other and further relief

as defendants may show themselves to be entitled."

Following the filing of the answer, a series of motions were filed by the named defendants for various orders permitting defendants access to the records of the corporations, and also for an order enjoining the plaintiff from taking any action against the Louisiana Loan & Thrift Corporation, which is a corporation that was organized under the laws of the State of Louisiana, and was engaged in a business similar to that of the defendants herein.

Also, among said motions was one filed by the defendant Savings praying that the court "revoke, vacate and annul the order appointing a receiver as to Savings Guaranty Corporation and for such other and further relief as it may' show to be entitled." Upon consideration of these intermediate motions, the court on April 12, 1968, entered an order directing that further consideration of the answer and motion of defendants to dismiss the preliminary injunction and dissolve the receivership of the defendant corporations be continued until the further orders of the court.

In the meantime, further hearings were held on the various motions relative to production of documents, etc., and for the taking of depositions, largely discovery in content.

On July 2, 1968, the defendants filed motions to:

(1) Vacate receivership as to Savings Guaranty Corporation;

(2) Install Savings Guaranty Corporation as Receiver for Arkansas Loan & Thrift Corporation;

(3) Approve a plan for the protection of and payment to owners of Thrift Accounts.

On August 8, 1968, the court entered an order fixing September 10, 1968, as the date for a hearing on the motions, and, inter alia, ordered:

"The court will expect all parties to be ready for a full and complete inquiry into the operations of all of the defendants, including the directors and officers of each of the corporate defendants. There will also be inquired into the basis of statements made by the defendant Ernest A. Bartlett and others as to the conduct of the Receiver appointed by this court on March 14, 1968.

'To date there has not been filed a full and complete audit of the affairs of the defendant corporations and their officers, and the court will expect the Receiver to be able to present at the hearing, if not a complete and certified audit, a workable audit to be considered by the court, and a separate statement as to the value of the assets in the hands of the Receiver derived from the operations of the Arkansas Loan & Thrift Corporation and the United Loan & Investment Company.

"Also, a hearing will be held on any other pertinent and relevant issues in addition to the matters hereinbefore stated."

During the hearing on September 10, 1968, the then attorneys, John A. Spinuzzi and Sam Sexton, Jr., through Mr. Spinuzzi, orally announced their desire to withdraw the motions and to make certain stipulations. In accordance with the request the court on September 23, 1968, entered the following order:

"On the 10th day of September, 1968, came on to be heard the Motions of the Defendants and the Trustees of Savings Guaranty Corporation to vacate the receivership as to Savings Guaranty Corporation, to install Savings Guaranty Corporation as Receiver for Arkansas Loan and Thrift Corporation and to approve a plan for the protection of and payment to owners of thrift accounts; and such other matters pertinent to this cause; and all parties being represented herein by their counsel of record, the attorneys for Defendants and said Trustees did, in open court, withdraw the

above motions and stipulated to the following:

"1. Based upon the audit prepared and filed herein pursuant to Order of this Court, Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation and United Loan & Investment Company are, and were as of March 13, 1968, insolvent.

"2. The entry of a judgment on behalf of the bond investment certificate (thrift account) holders of Arkansas Loan & Thrift Corporation against Savings Guaranty Corporation in the amount of the deficiency owed these persons by Savings Guaranty Corporation because of the insolvency of Arkansas Loan & Thrift Corporation.

"3. The Receiver, Lem C. Bryan, should proceed with an orderly liquidation of the assets of the defendant corporations, Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation and United Loan & Investment Company, for the benefit of their creditors.

"4. The payment to bond investment certificate (thrift account) holders and other creditors of Arkansas Loan & Thrift Corporation of such sums as are or hereinafter become available through liquidation, save and except no sums are to be paid those directors who are officers, directors or trustees of defendant corporations, nor to affiliates of said officers, directors and trustees in which they have a beneficial interest, until such time as all other creditors have been fully paid.

"5. The entry of a final judgment of permanent injunction against Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation, United Loan & Investment Company, Ernest A. Bartlett, Hoyt Borum and Afton Borum as prayed for in Plaintiff's complaint.

"6. Pursuant to the voluntary agreement of those officers, directors and trustees represented herein to prepare and execute agreements to secure and guarantee to the extent of their financial ability the bond investment certificate (thrift account) holders for any deficiencies and to make such payments as may become necessary to satisfy such deficiencies which may exist after an orderly liquidation of the assets of the defendant corporations.

"It appearing to the Court, based upon the financial statements filed of record by the Receiver, the transcripts of testimony, affidavits and evidence of record, and the above stipulation of counsel that the defendant corporations are now and were insolvent as of March 13, 1968, and that an orderly liquidation of the assets of defendant corporations should be made for the benefit of bond investment certificate (thrift account) holders and other creditors and that plaintiff is entitled to a permanent injunction as prayed;

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the preliminary injunction heretofore entered herein shall be made permanent; that the affidavits, transcripts of testimony (excluding the transcript previously ordered held in camera) and other documents on file herein are and shall be a part of the record herein; that the bond investment certificate (thrift account) holders of Arkansas Loan & Thrift Corporation have judgment against Savings Guaranty Corporation for the deficiency owed such creditors by Savings Guaranty Corporation because of the insolvency of Arkansas Loan & Thrift Corporation; that the assets of Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation and United Loan & Investment Company shall be liquidated pursuant to a plan of liquidation to be filed by the Receiver with this Court within thirty (30) days from the entry of this Order, and such assets and funds derived therefrom shall be distributed pro rata to the creditors including bond investment certificate (thrift account) holders of the defendant corporations (excluding creditors who are officers, di-

rectors or trustees of defendant corporations, and further excluding those affiliates of said officers, directors and trustees in which they have a beneficial interest) after notice of such proposed distribution has been published; and

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a partial distribution of liquid assets of defendant corporations shall be made, after publication of proper notice, to all creditors of defendant corporations except those who are officers, directors or trustees thereof and except as to those affiliates of said officers, directors and trustees in which they have a beneficial interest, and

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that pursuant to the voluntary agreement of those officers, directors and trustees represented herein, that agreements and instruments be prepared and executed by them and presented to this Court for its approval whereby they undertake to secure and guarantee, to the extent of their financial ability to so perform, the bond investment certificate (thrift account) holders for any deficiencies and that payment be made by them to satisfy such deficiencies which may exist after an orderly liquidation of the assets of the defendant corporations."

On October 23, 1968, the present petitioners filed their petition, upon which the court on the next day, October 24, 1968, entered the following Order:

"On July 2, 1968, the Savings Guaranty Corporation, by and through its Board of Trustees filed its motion to (1) vacate the receivership as to Savings Guaranty Corporation, (2) install Savings Guaranty Corporation as Receiver for Arkansas Loan & Thrift Corporation, and (3) to approve a plan, as set forth in the motion, for the protection of and payment to owners of thrift accounts of sums due such owners.

"On July 12, 1968, the plaintiff filed a motion to stay consideration of the motion of Savings Guaranty Corporation until compliance by Ernest Bartlett, Jr.,

Hoyt Borum and Afton Borum with certain orders of the court relative to financial reports.

"On the same day, July 12, 1968, the court entered an order staying the proceedings until the defendant Ernest Bartlett, Jr., had complied with the court's orders of May 15 and May 31, 1968, and pending responses by the defendants Ernest Bartlett, Jr., Hoyt Borum and Afton Borum to the interrogatories submitted May 23, 1968.

"On August 8, 1968, the court entered an order setting the motion of Savings Guaranty Corporation for a hearing to begin on September 10, 1968, at 9:30 a. m.

"On September 9, 1968, the plaintiff filed a motion to strike the motion of Savings Guaranty Corporation filed on July 2, 1968.

"The hearing set for September 10, 1968, proceeded, the defendants appearing by John A. Spinuzzi and Sam Sexton, Jr., attorneys, and the plaintiff appearing by Robert F. Watson, attorney. At the beginning of the hearing, the attorneys for the defendants Arkansas Loan & Thrift Corporation, United Loan & Investment Company, and Savings Guaranty Corporation withdrew the motion of the defendants, and entered into the stipulations as set forth in the order of the court entered September 23, 1968. At that time the various directors and trustees of the defendant corporations had not filed and signed such stipulation and consent as reflected in paragraph 6 of the order entered September 23, 1968.

"On October 23, 1968, Ernest A. Bartlett, Jr., Joe Lee Anderson, E. M. Clem, Gaylord B. Roberson, Joe D. Jeryo, Nyle B. Oswalt, Afton A. Borum, Ralph C. Ingram, Pete Wells, Paul A. Michler, Leslie D. Humphrey, Lawrence T. Davis and Hoyt Borum, filed their petition, in which they alleged that certain persons, to-wit: Harley L. Williams, Ozark, Arkansas; George Roberson, Fort Smith, Arkansas; Lee Edwards, Van Buren,

Arkansas; Ralph Myers, Waldron, Arkansas; and Charles R. Garner, Fort Smith, Arkansas; 'are persons who, like your petitioners, were either officers or directors of Arkansas Loan & Thrift Corporation or were trustees of Savings Guaranty Corporation,' and that said persons are represented by other counsel, and that this court should direct that notice of this motion be given to such persons, and they should be required to elect to either assist in the objective sought to be accomplished by this petition, or to elect to refrain from so doing.

"Accompanying the petition filed October 23, 1968, was an executed copy of the stipulation and consent as set forth in the order entered September 23, 1968, to-wit:

### 'STIPULATION AND CONSENT

" 'The defendants, Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation, United Loan & Investment Company, Ernest A. Bartlett, Hoyt Borum and Afton Borum, and the undersigned officers, directors and trustees of Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation and United Loan & Investment Company hereby stipulate and consent individually and in their corporate capacities to the entry of the above order.

/s/   John A. Spinuzzi
John A. Spinuzzi

/s/   Sam Sexton, Jr.
Sam Sexton, Jr.

Attorneys for Defendants, Arkansas Loan & Thrift Corporation, Savings Guaranty Corporation, United Loan & Investment Company, Ernest A. Bartlett, Hoyt Borum and Afton Borum.

/s/   Robert F. Watson
Attorney for Plaintiff, Securities and Exchange Commission.

'All signed document for use of our att. Sam Sexton only in our behalf.'

/s/   Ernest A. Bartlett
Ernest A. Bartlett

/s/   Hoyt Borum, Director
Hoyt Borum

/s/   Afton Borum
Afton Borum

ARKANSAS LOAN & THRIFT CORPORATION
By:   /s/   Afton Borum, Pres.

SAVINGS GUARANTY CORPORATION
By:   /s/   E. M. Clem, President

UNITED LOAN & INVESTMENT COMPANY
By:   /s/   Afton Borum, Pres.

/s/   Ralph C. Ingram

/s/   Joe D. Jeryo

/s/   Gaylord B. Roberson

/s/   Pete Wells

/s/   Paul A. Michler

/s/   L. T. Davis

/s/   Leslie D. Humphrey     ,

"IT IS, THEREFORE, ORDERED AND ADJUDGED that the above stipulation be and the same is made a part of the order of September 23, 1968, guaranteeing to secure and guarantee to the extent of their financial ability the bond investment certificate (thrift account) holders for any deficiencies and to make such payments as may become necessary to satisfy such deficiencies which may exist after an orderly liquidation of the assets of the defendant corporations.

"The prayer of the petition is that the court set a time and place for a hearing, and that at the conclusion of such hearing the court make and enter its order directing 'the Receiver to make available to petitioners all of the books, records and information in his possession relating to the notes and mortgages owed to Arkansas Loan & Thrift Corporation and/or Savings Guaranty Corporation; and that this court authorize and permit your petitioners, at their sole cost and expense, to take all necessary steps and to perform all necessary acts to enforce the collection of such notes and mortgages and to see that payments due under such notes and mortgages be made and delivered to the Receiver; and, that the Receivership be specifically continued so that the Receiver may receive such payments.'

"In accordance with the said petition the Clerk of the Court is directed to notify, either by certified or registered mail, the persons heretofore named of the filing of the petition in order that they may respond thereto if they so desire.

"IT IS FURTHER ORDERED that a hearing be held upon the petition beginning at 9:30 a. m., on Wednesday, November 13, 1968, in the United States District Courtroom at Fort Smith, Arkansas."

In the petition upon which the above order was entered, the petitioners, inter alia, alleged:

"3. As shown by page six of the statement of Mr. Swofford, which statement relates to the affairs of Arkansas Loan and Thrift Corporation, the accountant made an allowance for bad debt losses in the amount of $1,961,386.27. As shown by the deposition of Mr. Swofford, this figure was not arrived at by any usual accounting procedure, but was an arbitrary reserve figure established by Mr. Swofford. An examination of the items ·reflected above will show that the only reason that Arkansas Loan and Thrift Corporation and Savings Guaranty Corporation can be held to be insolvent is the use of this arbitrary allowance for bad debts.

"4. Petitioner states that they are of the belief that the notes receivable and real estate loans owned by Arkansas Loan and Thrift Corporation and Savings Guaranty Corporation are collectible and that fairness and equity, both to the petitioners and to the holders of the bond investment certificates, requires that the notes receivable and real estate loans owed to Arkansas Loan and Thrift Corporation and Savings Guaranty Corporation be collected. Petitioners would specifically point out that they have a vital interest in seeing that such debts due Arkansas Loan and Thrift Corporation and Savings Guaranty Corporation be collected for the reason that the personal liability of your petitioners will be directly increased unless such debts due to the corporations be collected in full.

"5. Petitioners state that the Receiver for this corporation was appointed on March 13, 1968. Since that time demands upon the time of the Receiver have been such that for practical purposes it has been almost impossible for the Receiver to devote any amount of time to the collection of the notes that are due to Arkansas Loan and Thrift Corporation and that for this reason a great number of the notes have become delinquent and that it is imperative that some action be taken to enforce the collection of these items otherwise substantial loss

will be incurred. Petitioners state that they have the time and resources to devote to enforcing the collection of the notes receivable due to Arkansas Loan and Thrift Corporation and Savings Guaranty Corporation and that they should be permitted to assist in the collection of these items, at their own expense, for the common good of the holders of the bond investment certificates and for the purpose of reducing their own personal liability.

"6.  Lawrence T. Davis, one of your petitioners, is a person who is experienced in collecting notes receivable and is a person with considerable business experience and is available for the purpose of undertaking to enforce the collection of the notes due to Arkansas Loan and Thrift Corporation and Savings Guaranty Corporation."

Following the hearing on November 13, 1968, the court, after reciting appearance of the various parties and their attorneys, and being fully advised of all issues, found and adjudged as follows:

"The plaintiff, Securities and Exchange Commission, having moved at said hearing to dismiss the petition described above and the Court having held three previous hearings in this matter, having had an opportunity to examine transcripts of interrogations, affidavits, depositions, pleadings and exhibits thereto filed herein, and having been fully advised in the premises makes the following findings, conclusions, and order:

"1.

"No issues of fact were raised by this petition that were not adjudicated by the final judgment of permanent injunction entered by this court on September 20, 1968, and the order entered by this court on September 23, 1968, both of which were entered pursuant to stipulation of counsel and of the above named petitioners.

"2.

"The court found at that time that the record before the court disclosed violations of the federal securities laws, insolvency of the defendant corporations and mismanagement on the part of the officers and directors thereof including the petitioners herein. The court hereby reaffirms that finding.

"It is, therefore, in the best interest of the investors and creditors of Arkansas Loan and Thrift Corporation, United Loan and Investment Company and Savings Guaranty Corporation that the motion of the plaintiff be granted and that the petition now before the court be dismissed.

"IT IS THEREFORE ORDERED AND ADJUDGED that the petition of Ernest A. Bartlett, Jr., Joe Lee Anderson, E. M. Clem, Gaylord B. Roberson, Joe D. Jeryo, Nyle B. Oswalt, Afton A. Borum, Ralph C. Ingram, Pete Wells, Paul A. Michler, Leslie D. Humphrey, Lawrence T. Davis and Hoyt Borum be and the same hereby is denied and dismissed with prejudice."

On November 27, 1968, the petitioners gave notice of appeal to the United States Court of Appeals for the Eighth Circuit from the order entered November 13, 1968.

This brings the court to a consideration of the motion filed December 27, 1968, which was set forth in full at the beginning of this opinion. In paragraph 4 of their motion, the movants alleged that the court is wholly without jurisdiction to order liquidation of the corporations by a receiver, and that all the actions taken by the Receiver in an attempt to liquidate the corporations are without authority of law; that the only permissible method for liquidation of the corporations is by reference to bankruptcy and by liquidation by a trustee in bankruptcy under the supervision of the Referee in Bankruptcy.

It cannot be doubted that it was the duty of the SEC to petition for an injunction and the appointment of a receiver. "Where a court of equity has obtained jurisdiction over some portion of a controversy, it may, and will in gen-

eral, proceed to decide the whole issues and award complete relief, even where the rights of parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law." Hartford Accident & Indemnity Co. of Hartford v. Southern Pac. Co., (1927) 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612.

Bellevue Gardens, Inc., v. Hill, (D.C. Cir. 1961) 111 U.S.App.D.C. 343, 297 F. 2d 185, was a case where the minority stockholders brought actions relating to the conduct of the affairs of two closely held corporations, and sought liquidation of the two corporations and distribution of assets to shareholders. The trial court found a pattern of conduct by the dominant stockholders, and a disposition on their part to continue the pattern, which was seriously prejudicial to the rights and interests of the minority, and the court held that a court of equity has inherent power to appoint a receiver to liquidate a corporation where an abuse of trust is present, whether or not insolvency is likewise present.

In Bailey v. Proctor, (1 Cir. 1947) 160 F.2d 78, cert. den. 331 U.S. 834, 67 S. Ct. 1515, 91 L.Ed. 1847, the court discussed the question and held that where fraud, mismanagement, or abuse of trust is present, a court of equity has jurisdiction to liquidate the corporation (citing many cases).

In Riehle v. Margolies, (1929) 279 U. S. 218, 49 S.Ct. 310, 73 L.Ed. 669, the court said:

"The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets."

In East v. Crowdus, (8 Cir. 1962) 302 F.2d 645, the court at page 647 said:

"Receivers have been appointed at the instance of the Securities and Exchange Commission in many cases, e. g., Securities and Exchange Commission v. Los Angeles Trust Deed and Mortgage Exchange, 285 F.2d 162 (9 Cir. 1960) and cases therein cited. The interest of the Securities and Exchange Commission in such an action does not terminate upon the appointment of a receiver therein. Under Section 78u of the 1934 Act (15 U.S. C.A. § 78u) the Commission is authorized to apply to the Federal Courts in aid of enforcement of the powers vested in it and seek equitable relief to compel compliance with the Act. When the Commission does so it has the duty to prosecute such action to finality in the public interest. Certainly, if a receiver is appointed in any such action and the Commission should learn of any unconscionable malfeasance or neglect on the part of the receiver, no court would hold that the Commission was without standing to bring such matters to the appointing court's attention; or that the Commission is without standing to give heed as to how the assets taken possession of by any such receiver are disposed of in the public interest."

█ Without doubt, the court had jurisdiction to appoint a receiver in the first instance. The persons whose interest the court had been asked to protect are holders of debt securities issued by the corporations in receivership. The record establishes beyond any doubt that the securities were sold through fraud and the proceeds from the sale of the securities were used for the benefit of management rather than for the benefit of investors, contrary to representations made by management at the time of sale. Such conduct definitely constitutes mismanagement and abuse of trust.

█ In oral argument the movants argued that there was a defect in the parties in that the creditors were not parties. The Receiver was appointed to protect the interest of the creditors, and that is what he is now and has been attempting to do since his appointment.

The present motion, as well as other motions, was filed in utter disregard of

the stipulation entered into by the parties as reflected in the order based on the hearing of September 10 and entered September 23, and amplified by the order entered on October 24, after all the directors and trustees except four who are not involved herein had formally signed the stipulation.

The judgment entered September 23 has been set forth in toto, but the court desires to briefly reiterate paragraph 6 of the stipulation which was made in open court:

"Pursuant to the voluntary agreement of those officers, directors and trustees represented herein to prepare and execute agreements to secure and guarantee to the extent of their financial ability the bond investment certificates (thrift account) holders for any deficiencies and to make such payments as may become necessary to satisfy such deficiencies which may exist after any orderly liquidation of the assets of the defendant corporations."

■ Apparently the learned attorneys for the movants do not recognize the effect of such stipulation and seek to avoid its force by alleging that the Receiver has not filed a formal plan of liquidation. Through no fault of the Receiver he has not been able to file a formal plan, but has been busily trying to collect the assets of the corporations and aiding and assisting the investors to make solid proof of the indebtedness owed them. Many, many other events have occurred through no fault of the Receiver which have caused a delay in making a partial distribution. It does not appear necessary to further discuss that question since on October 17, 1968, the court entered an order in which it referred to the provision in the order of September 23 that directed the Receiver to formulate and formally file a plan of liquidation and stated:

" * * * the Receiver has diligently attempted to formulate a general plan of liquidation, but because of various complications in the accounts and the necessity of establishing the validity of all such accounts, it is apparent that he will be unable to file a general plan within the time allowed in said order.

"THEREFORE, the Receiver is granted such additional time as may be necessary to formulate a general plan, but shall proceed with all reasonable dispatch to formulate a plan for a pro rata distribution to holders of bond investment certificates (thrift accounts) subject to the exclusions set forth in the Order, and to report such plan to the court for such orders as may appear to be necessary and proper."

In the order that the court entered on November 13, 1968, the court found that no issues of fact were raised by the petition of October 23 that were not adjudicated by the final judgment of permanent injunction entered on September 20 and the order entered on September 23, both of which were entered pursuant to stipulation of counsel in open court.

In Swift & Co. v. United States, (1928) 276 U.S. 311, 48 S.Ct. 311, 72 L. Ed. 587, the court at page 314 of 48 S.Ct. said:

"But 'a decree, which appears by the record to have been rendered by consent, is always affirmed, without considering the merits of the cause.' "

■ The movants do not contend that the former orders of the court are subject to any infirmity because of the lack of formal consent or fraud or mistake, and apparently base their entire contention upon their claim of the lack of jurisdiction.

In Hoffman v. Celebrezze, (Jan. 14, 1969) 8 Cir., 405 F.2d 833, the Court of Appeals for the Eighth Circuit, at page 836 quoted with approval from Swift & Co., supra, and stated:

"Parties are generally bound by their agreements made in court." (Citing Farmers Co-op. El. Ass'n Non-Stock etc. v. Strand, 8 Cir., 382 F.2d 224;

Hart Schaffner & Marx v. Alexander's Dept. Stores, 2 Cir., 341 F.2d 101.)

In Farmers Co-op. El. Ass'n Non-Stock, supra, the court at page 231 of 382 F.2d said:

"We believe the defendant is precluded from raising such issues here because of the stipulation made at the trial that regulations contained in Exhibit 26 were in effect at the time of the accident. The general rule is that parties are bound by stipulations voluntarily made and that relief from such stipulations after judgment is warranted only under exceptional circumstances. See Osborne v. United States, 8 Cir., 351 F.2d 111, 120; Jackson v. United States, 8 Cir., 330 F.2d 679, 681; Burstein v. United States, 8 Cir., 232 F.2d 19, 22."

Thus the court is of the opinion that the movants are precluded from asserting the motion now before the court and that the motion should be dismissed for that reason.

██ The movants further argue that the proceedings should be transferred to bankruptcy, preferably Chapter X, for the reason that the Receiver is handicapped and does not have the power that a trustee in bankruptcy has for the collection of the indebtedness due the corporations. In the memorandum brief in support of the present motion, learned counsel for the movants stated:

"The movants have always possessed the strong desire to see the assets of the corporations returned to the depositors and not used for any other purpose. That the corporations can be liquidated only in bankruptcy has been firmly settled." (Citing Los Angeles Trust Deed & Mortgage Exchange v. Securities & Exchange Comm., (9 Cir. 1960) 285 F.2d 162; and Esbitt v. Dutch-American Mercantile Corp., (2 Cir. 1964) 335 F.2d 141.

In Los Angeles Trust Deed & Mortgage Exchange, supra, the court at page 182 of 285 F.2d said:

"The trial court has found insolvency in the bankruptcy sense, but there is no apparent reason here why the violation of the Securities Act and the Securities Exchange Act should lead to a different type of final liquidation than that which is had for the normal corporate bankrupt. In true bankruptcy, procedures are better geared for creditors and depositors to give them a day in court and protect their rights. Also, the Bankruptcy Act (11 U.S.C.A. § 1 et seq.) has provisions for reorganization."

In Esbitt, supra, the court at page 143 of 335 F.2d said:

"This is not to say that we approve the use of an equity receivership to perform the functions of the bankruptcy court. The record plainly indicates that the First Discount Corporation is hopelessly insolvent and is in the process (almost completed) of liquidation. We see no reason why violation of the Securities Act should result in the liquidation of an insolvent corporation via an equity receivership instead of the normal bankruptcy procedures, which are much better designed to protect the rights of interested parties."

Continuing on page 143, the court said:

"However, the receivership has progressed almost to completion without objection and it would apparently not be in the interests of the parties to direct that further proceedings be diverted into bankruptcy channels."

It should be borne in mind that this proceeding was commenced on March 11, 1968, and has been under constant attack by the trustees and directors of the involved corporations, although all of the attacks have not been consistent, but now, after making various attacks and seeking to regain conrol of the corporations for various asserted reasons, they have decided that the proceedings should be tried to bankruptcy, preferably Chapter X, in order that the trustee in bankruptcy will be required to submit a report of his study to all security holders with notice to submit to him proposed

reorganization plans. In other words, the movants would like to undertake to reorganize these corporations notwithstanding the fact that the liabilities of AL&T on March 13, 1968, exceeded its assets by more than $3,100,000. It had outstanding bond investment certificates (thrift accounts) in excess of $4,200,000 held by approximately 2300 persons. The liabilities of Savings exceeded its assets by more than $2,400,000, and it should be borne in mind that these movants and all others connected with the corporations stipulated in open court that these corporations were insolvent.

Nothing has been said in the course of this opinion relative to United other than to mention the fact that it was a division of AL&T. The court has in its possession copy of a decree entered January 17, 1969, by the Chancery Court of Pulaski County, Third Division, cancelling and revoking its Certificate of Authority to engage in business similar to that in which it had been engaged.

One of the efforts of the movants was to dissolve the receivership and to appoint Savings as a receiver, and on the date set for hearing on the motion, September 10, 1968, all of them entered into the stipulation heretofore mentioned and discussed. In all probability, the directors and trustees of the corporations, upon further consideration and in view of the work being done by the Receiver to collect the assets and to apply them to the liquidation pro rata of the debts, filed the instant motion.

The Receiver has been successful in many of his efforts notwithstanding the attitude of the directors and trustees. Thirteen suits have been filed by the Receiver to foreclose mortgages and to obtain judgments against some, if not at all, of the movants. One of the suits seeks a recovery of $176,849.14 for notes allegedly executed for loans from AL&T. One suit seeks to recover $777,800 on notes executed for the purchase of the capital stock of Savings. The Receiver has been able to recover several auto-mobiles from various individuals that were paid for by AL&T. Volumes could be written about the work that has been done by the Receiver for the benefit of the creditors, but space forbids the enumeration or even attempted enumeration of all the actions taken by him. To say the least, his task has not been an easy one. Neither has the court had a holiday because of the various motions that have been filed from time to time, all tending to obstruct the collection of the assets and to postpone the final day of reckoning.

An examination of the complete record is convincing that it would not be in the interest of the creditors to direct that further proceedings be diverted into bankruptcy channels. If the directors and trustees desire to advance the liquidation and restore at least a part of the money of the innocent investors that has been diverted to the extent of millions of dollars, they could make a substantial contribution by paying to the Receiver the debts that they personally owe.

Section 2(a) (21) of the Bankruptcy Act, 11 U.S.C.A. § 11(a) (21), provides as follows:

"Courts of bankruptcy may:

"Require receivers or trustees appointed in proceedings not under this Act, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this Act or, where an arrangement or a plan under this Act has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this Act, to deliver such property to the debtor or other person entitled to such property according to the provisions of the arrangement or plan, and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: Provided, however, That such delivery and accounting shall not

be required, except in proceedings under section 77 and Chapters X and XII of this Act, if the receiver or trustee was appointed, the assignment was made, or the agent was authorized more than four months prior to the date of bankruptcy. Upon such accounting, the court shall reexamine and determine the propriety and reasonableness of all disbursements made out of such property by such receiver, trustee, assignee, or agent, either to himself or to others, for services and expenses under such receivership, trusteeship, assignment, or agency, and shall, unless such disbursements have been approved, upon notice to creditors and other parties in interest, by a court of competent jurisdiction prior to the proceeding under this Act, surcharge such receiver, trustee, assignee, or agent the amount of any disbursement determined by the court to have been improper or excessive."

1 Collier on Bankruptcy, 14th Ed., ¶ 2.78, p. 390.10, in commenting upon the statute, said:

"Where a non-bankruptcy receiver or trustee was appointed *more* than four months before the filing of the bankruptcy petition, the receivership or trustee proceedings will not be superseded (except in section 77, Chapters X and XII proceedings), and the receiver or trustee need not surrender any property to the bankruptcy court, unless there proves to be a surplus over and above that necessary to satisfy lienors and claimants in the non-bankruptcy proceeding."

In re Distillers Factors Corp., (3 Cir. 1951) 187 F.2d 685, was an appeal from an order of the U. S. District Court of New Jersey dismissing sua sponte appellant's petition for an arrangement under Chapter XI of the Bankruptcy Act. The court at page 687 summarized the statute as follows:

"The power of the district court to compel the state receiver to deliver assets to the bankruptcy trustee is dependent on Section 2, sub. a(21) of the Bankruptcy Act. This section explicitly prohibits supersession of the possession of such receivers 'except in proceedings under chapters 10 and 12 * * * if the receiver or trustee was appointed * * * more than four months prior to the date of bankruptcy.' "

Appellant sought to avoid the impact of this provision by claiming automatic supersession regardless of the passage of time on the theory that the New Jersey statute is in the nature of a bankruptcy act and thus to some extent invalid. In discussing this contention the court said:

"Evaluation of such interference rests in large part on the scope Congress itself had indicated for the operation of its own bankruptcy legislation. The language of Section 2, sub. a(21), leaves little doubt that a non-bankruptcy receivership valid in its inception and of more than four months' duration, whatever its character, is to be tolerated where the federal relief sought is an arrangement."

The court has already referred to the statement made in oral argument by counsel for the movants that he would prefer that the case be transferred and proceedings had in bankruptcy under Chapter X. While the above statute does except from its operation proceedings under Chapters X and XII, it is possible that the proceedings would be under Chapter XI, without the safeguards to creditors under Chapter X, if the proceedings were transferred. In any event, in view of the lapse of nine months after the instant proceedings were filed and the extent of the work that the Receiver has done for the benefit of the creditors and the prior actions taken by the movants which have resulted in delays in the liquidation, it is obviously not to the best interest of the creditors to transfer the proceedings to bankruptcy regardless of the chapter under which it might be transferred.

Therefore, for the reasons hereinbefore set forth, judgment is being entered dismissing the petition of movants filed on December 27, 1968.