In the Matter of **NAFTALIN & CO., Inc.,**
a Minnesota corporation, Alleged
Bankrupt (two cases).

Nos. 4–70 BKY 137, 4–70 BKY–170.

United States District Court,
D. Minnesota,
Fourth Division.

July 8, 1970.

O'Connor, Green, Thomas, Walters & Kelly, by Joe A. Walters and Frank J. Walz, Minneapolis, Minn., for alleged bankrupt.

Richards, Montgomery, Cobb & Bassford, Minneapolis, Minn., by L. H. May, Jr., and Jon D. Jensvold, Minneapolis, Minn., for petitioning creditors Merrill Lynch, Pierce, Fenner & Smith and Paine, Webber, Jackson & Curtis.

Faegre & Benson, by Bruce F. Burton, Minneapolis, Minn., for petitioning creditor Piper, Jaffray & Hopwood, Inc.

Mackall, Crounse, Moore, Helmey & Holmes, by Clay R. Moore, Minneapolis, Minn., and Schiff, Hardin, Waite, Dorschel & Britton, by Burton R. Rissman, Chicago, Ill., for petitioning creditors H. S. Kipnis & Co., Donaldson, Lufkin & Jenrette, Inc. and Francis I. duPont & Co.

NEVILLE, District Judge.

February 10, 1970, three brokerage houses, Merrill Lynch, Pierce, Fenner & Smith of New York; Paine, Webber, Jackson & Curtis of New York; and Piper, Jaffray & Hopwood, Incorporated of Minneapolis filed a petition in bankruptcy alleging "provable claims * * * amounting in the aggregate to $500.00 * * *" and seeking to have Naftalin & Co., Inc., a Minnesota corporation at one time engaged in the stock brokerage business, adjudged an involuntary bankrupt. February 18, 1970, eight days later, three other brokerage houses, H. S. Kipness & Co. of Chicago; Donaldson, Lufkin & Jenrette, Inc. of New York; and Francis I. duPont, of New York City

filed a separate petition with similar allegations and seeking the same relief. Normally, under this court's general order of August 5, 1964 entered pursuant to 11 U.S.C. § 45, the clerk of court automatically would have referred these cases to a Referee in Bankruptcy for his attention and determination. Naftalin & Co. however answered the petitions denying its insolvency and timely demanded a jury trial.

11 U.S.C. § 42 provides:

"(a) A person against whom an involuntary petition has been filed shall be entitled to have a trial by jury in respect to the question of his insolvency, except as herein otherwise provided, *and of any act of bankruptcy alleged in such petition* to have been committed, upon filing a written application therefor at or before the time within which an answer may be filed." [Emphasis added.]

The local Bankruptcy Rules for the United States District Court for the District of Minnesota provide:

"In case a jury trial is demanded, as provided by Section 19 of the Bankruptcy Act, the clerk shall place the case on the next jury trial calendar in the division in which the case is pending, unless otherwise ordered by the judge." [Rule 23]

Both groups of creditors have moved the court for a summary judgment under Rule 56 of the Federal Rules of Civil Procedure, asserting that there exists no material issue of fact as to Naftalin & Co.'s insolvency and that it committed an act of bankruptcy. They cite in support of their contention numerous previous *admissions by Naftalin & Co.* of its insolvency.[1] Additionally, and pref-

erably from the petitioner's standpoint after the court has adjudicated Naftalin & Co. a bankrupt, the petitioning creditors request that the case be referred to the referee in bankruptcy for all further proceedings. To the contrary of its demand for a jury trial, the alleged bankrupt Naftalin & Co. has moved the court for a dismissal of both petitions asserting lack of this court's jurisdiction.

■■ In the orderly administration of justice all bankruptcy matters normally should be presented first to a referee in bankruptcy and issues of law and fact there determined. Consequently in this case if there be no genuine fact issue for determination by a jury, the court does not believe that it should determine *ab initio* Naftalin & Co.'s solvency or insolvency, nor should the court adjudicate it a bankrupt if insolvency is determined. A Referee has expertise in bankruptcy matters and should consider and determine cases in the first instance, subject of course to a review by this court when the appropriate steps have been taken to bring the same before the court. Consequently this court need not in the first instance pass on the issue of whether as a matter of law a summary judgment adjudicating bankruptcy may or should be entered pursuant to Rule 56 of the Federal Rules of Civil Procedure, but rather should confine itself solely to a determination of the more narrow issue as to whether or not under 11 U.S.C. § 42 there is a question present for determination by a jury; for if there is not, then this court should take no action and merely enter an order of reference to a Referee in Bankruptcy.

The controversy in the case at bar arises from certain transactions had be-

---

1. The petitioning creditors point out that in a receivership pending in this court, Securities and Exchange Commission v. Naftalin & Co. Inc., No. 4–69 Civ. 385, the very act of appointing a receiver was premised on an express finding of Naftalin & Co.'s insolvency; that in proceedings before the State of Minnesota Securities Commission resulting in the revocation of Naftalin & Co.'s license as a broker, Naftalin & Co.'s insolvency was admitted and the Commission clearly so found; that certain financial statements presented by Naftalin & Co. itself show a gross insolvency; that on more than one occasion Naftalin's former counsel wrote letters admitting insolvency, and the Company's principal officer Neil T. Naftalin it is claimed has so acknowledged.

tween Naftalin & Co. and some 23 various firms of stock brokers, six of whom are petitioners herein, in late July and August 1969. Naftalin sold "short" certain securities—that is sold securities which it did not then own. It never delivered the stock it had ordered sold to cover the "short" sales and as a result defendant became what is know in the stock brokerage vernacular as a "fail." Meantime, pursuant to requirements of law, the brokerage houses procured or "lent" stock to deliver to the purchasers to make good Naftalin & Co.'s sales.[2] In the latter part of October, 1969, the various brokerage houses "bought in" Naftalin & Co., that is bought stock in the market on the stock exchanges to replace the stock which Naftalin & Co. had sold but failed to deliver. It is claimed that the total loss to the 23 brokerage houses approximates or exceeds $1,200,000.

On November 4, 1969 more than three months prior to the filing of the first involuntary petition herein the Securities and Exchange Commission commenced an action in this court—Securities and Exchange Commission v. Naftalin & Co., Inc., No. 4–69 Civ. 385—as a result of which the Honorable Earl R. Larson, a judge of this court, on December 23, 1969 entered an order appointing a receiver to take charge of Naftalin & Co.'s affairs and assets. Though in its original answer in that receivership proceeding Naftalin & Co. admitted its insolvency and inability to meet its liabilities as they accrued and matured, an amended answer denying such was duly filed by the alleged bankrupt in the receivership proceedings on June 25, 1970 after the hearing before this court, pursuant to the order of the Honorable Earl R. Larson of June 4, 1970 granting leave therefor. The receivership is still extant and the receiver now holds some $28,000 in assets. In addition, pursuant to an order in said receivership proceedings of Judge Larson dated March 27, 1970, some $550,-000 or more of bearer United States bonds have been turned over to and are now in the possession of and held by the Clerk of this court, no ruling having yet been made as to their entitlement so far as this court is advised.[3] It is

2. Apparently Naftalin followed the practice in a typical case of contacting a broker and placing an order to sell, hypothetically, 1,000 shares of a named stock. Under applicable laws and regulations within a certain number of days thereafter (the number perhaps depending on the resolution of the question as to which rules or regulations are applicable under the facts of this case) Naftalin & Co. was required to deliver the 1,000 shares to the broker to replace shares which the broker then owned or had acquired and "lent" to Naftalin for delivery to the purchaser who had bought the 1,000 shares on the stock exchange. The obvious hope of Naftalin & Co. or of any "short" seller for that matter was that the market price of the stock might decline during the days allowed for delivery thereof to the broker, so that it could be acquired in the market at a price less than that for which it had been sold, thus yielding Naftalin a profit as a "short" seller. The obvious risk was that if the market were to rise during the period before delivery was required, the "buy in" price would be higher than the "short" sale price. It was this risk and the fact that the market prices did rise that in the

case at bar occasioned the alleged $1,200,000 loss.

3. The receiver was a witness before this court and testified that he had on hand some $28,000 in assets and knew of only approximately $2,000 in Naftalin & Co. debts, exclusive of the $1,200,000 more or less due or claimed to be due to the 23 various stock brokers. At the time of his testifying, the whereabouts of Neil T. Naftalin, the president and principal owner of Naftalin & Co. were apparently unknown to the receiver and certain negotiable bearer United States Bonds in the face amount of $550,000 to $600,000 which quite recently had been transferred from Naftalin & Co. to Neil T. Naftalin personally had not been turned over to the clerk of this court despite an order of Judge Larson of this court so requiring. The bonds later were discovered either in New York on their way to a Bank in Switzerland or were recaptured from a Bank in Switzerland. In any event, ultimately they, or most of them, were sequestered after some difficulty and are now in the possession of the clerk of this court.

claimed that the appointment of the receiver aforesaid constitutes the Fifth Act of Bankruptcy under 11 U.S.C. § 21(a) (5) which reads in part:

"(a) Acts of bankruptcy by a person shall consist of his having

\* \* \* \* \* \*

(5) *while insolvent* or unable to pay \* \* \* debts as they mature, procured, permitted or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of \* \* \* property." [Emphasis added]

It is obvious that the question of Naftalin & Co.'s solvency or insolvency must be determined before there can be an adjudication in bankruptcy and the same question of insolvency is involved in determining whether there has been the Fifth Act of Bankruptcy. Therefore if a jury trial were had the issue of solvency or insolvency would be important in two different ways.

*Alleged Bankrupt's Motion to Dismiss*

The first matter presented to the court is the alleged bankrupt's motion for dismissal of the present action.

 Naftalin & Co.'s answer denies that the petitioners are creditors of Naftalin & Co., although admitting that contracts for the sale of certain securities were entered into by and between the parties, denies that a receiver was suffered to be appointed while the corporation was in a state of insolvency and alleges further that in any event, the receiver appointed by Judge Larson in the Securities and Exchange Commission case is not the type of receiver which is encompassed within the Fifth Act of Bankruptcy. Naftalin & Co. asserts that this court lacks jurisdiction to adjudicate it a bankrupt or take possession of its property, distribute it and administer the affairs of the corporation because of the pendency of the prior receivership in this court. It is urged that exclusive jurisdiction was invoked by that proceeding and that the only receiver or trustee

or custodian that could properly conduct the affairs of the company is the one that was appointed December 23, 1969 aforesaid. Counsel contends that as a receiver was appointed in the SEC action aforesaid, he, and only he must carry the case through to complete liquidation. The argument is premised on Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) which states in part:

"The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder \* \* \* "

It is asserted that this exclusivity requires not only that state courts be prevented from hearing certain causes but also that other federal courts, and in particular a federal court sitting in bankruptcy, is forbidden to proceed in certain causes of action. In other words, Naftalin & Co. claims that once a court takes jurisdiction of a subject matter under the Securities Exchange Act of 1934, it acts to the exclusion of any other court to handle a matter which in any way touches upon the same subject matter. This court does not agree. A proper reading of Section 27 dictates that the word "exclusive" be interpreted to require only that federal courts as opposed to state courts must hear matters concerning violations of the Securities Exchange Act of 1934.

The language of Section 27 refers to the entire class of district courts, not just one or some; nor does it in any way indicate that a federal district court sitting in certain types of proceedings cannot consider such actions. This provision has been interpreted to refer to the necessity to bring such proceedings in the federal courts rather than the state courts. In Beury v. Beury, 127 F.

Supp. 786 (S.D.W.Va.1954), the court noted:

"It is clear, however, that such jurisdiction as is given by the Act is exclusive jurisdiction; that is, one which the state courts are not permitted to exercise." 127 F.Supp. at 789–790.

And in Moran v. Paine, Webber, Jackson & Curtis, 279 F.Supp. 573 (W.D.Pa. 1967), aff'd 389 F.2d 242 (3rd Cir. 1968), the court stated:

"We must first note that it is only as to the Securities Exchange Act of 1934 (15 U.S.C.A. § 78a et seq.) that the statute confers exclusive jurisdiction on the Federal Courts, 15 U.S.C.A. § 78aa. For causes of action arising out of violations of the Securities Act of 1933 (15 U.S.C.A. § 77a et seq.) 15 U.S.C.A. § 77v confers concurrent jurisdiction on the federal, state and territorial courts." 279 F.Supp. at 577.

See also Lankenau v. Coggeshall & Hicks, 350 F.2d 61 (2nd Cir. 1965).

This court is asked to make an adjudication of bankruptcy and any concern with the SEC laws seems quite incidental. The fact that there may be a parallel or substantially parallel procedure under the SEC laws is irrelevant. Nor is it a problem that the assets of Naftalin & Co. are in the custody of a receiver appointed in the SEC proceedings, for section 2(a) (21) of the Bankruptcy Act (11 U.S.C. § 11(a) (21)) states that courts of the United States defined as courts of bankruptcy have jurisdiction to:

"(21) Require receivers or trustees appointed in proceedings not under this title, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this title * * * provided, however, that such delivery and accounting shall not be required, except in proceedings under section 205 and chapters 10 and 12 of this title, if the receiver or trustee was appointed, the assignment was made, or the agent was authorized more than four months prior to the date of bankruptcy."

"date of bankruptcy" is defined in Section 1 of the Act (11 U.S.C.A. § 1(13)) to mean the date when the petition for adjudication was filed.

As further stated by Collier on Bankruptcy:

"Clause (21) of § 2a requires 'receiver or trustees appointed in proceedings not under this act' to deliver the property in their possession or control to the bankruptcy receiver, trustee, debtor or other person entitled to such property as the case may be, provided the non-bankruptcy receiver or trustee was appointed within four months prior to the date of filing the petition in bankruptcy. * * * Thus a general receivership to effect dissolution or liquidation, whether a state equity receivership or a federal equity receivership, initiated within the four-month period, is superseded by the adjudication in bankruptcy, and the receiver may be ordered summarily to deliver the property in his possession or control. * * *" Section 2.78, Vol. 1, 14th ed.

See also Wasserman v. Driscoll, 282 F.2d 502 (1st Cir. 1960).

As the SEC receiver was appointed on December 23, 1969 and the first petition in bankruptcy was filed on February 10, 1970 it would appear that the significant date was within the timely four-month period and the bankruptcy action would supersede the SEC action.

It has been directly held that the appointment of a receiver in an action by the Securities and Exchange Commission would not deter the liquidation of the entity in a bankruptcy proceeding. Los Angeles Trust Deed & Mortgage Exchange v. Securities and Exchange Commission, 285 F.2d 162 (9th Cir. 1960), cert. denied 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961).

It does not appear that the SEC receivership has progressed to a point where under the doctrine of Esbitt v.

Dutch-American Mercantile Corp., 335 F.2d 141 (2d Cir. 1965), or Securities and Exchange Commission v. Arkansas Loan and Thrift Corp., 294 F.Supp. 1233 (W.D.Ark.1969), such should prohibit a bankruptcy court from proceeding. The receiver testified that his actions have looked toward conserving and/or liquidating the alleged bankrupt estate. He has made no determination of claims of creditors nor any type of distribution. The final objectives of that receivership do not appear to be so near to accomplishment as to allow that receivership to continue to operate to the exclusion of bankruptcy proceedings.

Naftalin & Co.'s motion to dismiss is thus denied.

### Motions for Summary Judgment

The court is confronted with two separate motions under Rule 56 of the Federal Rules of Civil Procedure. One group of petitioning creditors, the H. S. Kipness group, prays the court for an adjudication that Naftalin & Co. is bankrupt. This would necessitate two findings by the court. First that an act of bankruptcy has been committed by the alleged bankrupt and second that the creditors have standing under Section 59 of the Bankruptcy Act (11 U.S.C. § 95). This latter necessitates the finding that the petitioners consist of at least three creditors who have provable claims against the alleged bankrupt in the aggregate amount of $500.00 or more. The remaining creditors in the Merrill Lynch group ask only that the court find that Naftalin & Co. committed the Fifth Act of bankruptcy and state they are not seeking a determination of their status as creditors.

However it appears to the court that were it to grant either motion for summary judgment, the findings it would have to make would, for all practical purposes, be coextensive. That is, in order to find that the Fifth Act of bankruptcy has occurred, the court must find that Naftalin & Co. was insolvent for it is only the appointment of a receiver *while in-* *solvent* that constitutes an act of bankruptcy. Whether the alleged bankrupt is in fact insolvent depends on the validity of the claims of the petitioners and of the remaining brokerage houses who are similarly situated, for if none of the 23 brokerage houses claims are valid, admittedly Naftalin & Co. is not insolvent. To find that these claims are valid in effect determines the standing of the petitioners.

Naftalin & Co. defends the motions for summary judgment on the grounds that it has an absolute right to a jury trial on the issues of insolvency and the existence of an act of bankruptcy. Counsel also advances the theory that Rule 56 of the Federal Rules of Civil Procedure is not applicable because Rule 81(a) states that the Federal Rules of Civil Procedure are inapplicable in a bankruptcy proceeding except as they are made applicable by rules promulgated by the United States Supreme Court. The Court is of the view that under Bankruptcy General Order 37 and Section 21(k) of the Bankruptcy Act, 11 U.S.C. § 44(k) this contention may not be well founded, but a decision thereon is not necessary in the light of the decision embraced herein.

Naftalin & Co. also argues that Section 19 of the Bankruptcy Act (11 U.S.C. § 42) grants an absolute right to a jury trial and removes any area of discretion concerning it.

An alleged bankrupt does not have an absolute right to a jury under all circumstances. It is well established that the right for a jury determination is limited to the issues of whether the alleged bankrupt is insolvent and whether he committed an act of bankruptcy. Elliott v. Toeppner, 187 U.S. 327, 23 S.Ct. 133, 47 L.Ed. 200 (1902); Wynne v. Rochelle, 385 F.2d 789 (5th Cir. 1967); Walker Grain Co. v. Gregg Grain Co., 268 F. 510 (5th Cir. 1920).

Though there are statements by courts to the effect that the right to

a jury once it has been demanded is absolute, see Elliott v. Toeppner, *supra*; In Re Thomas, 211 F.Supp. 187 (D.Colo. 1962), aff'd Thomas v. Youngstown Sheet & Tube Co., 327 F.2d 667 (10th Cir. 1964), cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36 (1964), these must be taken in their proper context. Bankruptcy is in the nature of an equitable proceeding and normally entitlement to a jury would be at the discretion of the court. Section 19 of the Bankruptcy Act (11 U.S.C. § 42) removes that discretion and requires a jury just as though it were a case at law. It does not mean however that one is entitled to a jury where there is no issue for a jury to decide, that is, where the issues of insolvency and the existence of an act of bankruptcy can be and must be decided as a matter of law. There must be a fact issue on these matters about which reasonable minds could differ. Even on the issues where the right to a jury is "absolute" the right to submit matters to them is subject to the common law and federal rules regulating the use thereof. See Wynne v. Rochelle, *supra*; Burns Bros. v. Cook Coal Co., 42 F.2d 109 (3d Cir. 1930).

In In re Georgia Jewelers, Inc., 219 F. Supp. 386 (N.D.Ga.1962), the court articulately allowed a motion for summary judgment:

" * * * The bankrupt in fact contends that its right to a jury trial is 'absolute', and that a granting of summary judgment is error even where no material issue of fact exists. Obviously the right to a jury trial on certain issues exists only when there are actual issues to be tried. If, on a motion for summary judgment, it is determined that there is no material issue of fact, then only questions of law remain and trial by jury is not only unnecessary, it would be an invasion of the province of the Judge who is the sole arbiter of matters of law.

The Fifth Circuit has repeatedly recognized that the so-called 'absolute right' of trial by jury is not violated by the summary judgment proceeding. Cunningham .v. Securities Investment Co., 278 F.2d 600; Whitaker v. Coleman, 115 F.2d 305. In the Whitaker case, the Court carefully pointed out that the purpose of summary judgment proceeding is not to cut litigants off from any right they might have to trial by jury, but, instead, the purpose is to carefully test out if there is really any evidence which would entitle them to such right. * * *" 219 F. Supp. at 399

The court is of the view that, once it has decided that the alleged bankrupt does not have an "absolute" right to a jury trial, the proper question before it is not whether summary judgment should be granted, but rather whether there is any issue which a jury should have a right to decide. If there is no such issue then the case should be sent to be heard in the first instance to the referee in bankruptcy. The referee has the jurisdiction and power under the Bankruptcy Act (11 U.S.C. § 66) to determine whether an individual or entity should be adjudicated bankrupt. The case is in the peculiar posture that though Naftalin & Co. should have made delivery of stock to cover its "short" sales, it claims that the losses it occasioned are not recoverable against it because the various brokers, by not "buying in" as soon as Naftalin & Co. became a "fail" thereby in some manner extended credit to Naftalin & Co. in violation of the Securities and Exchange Act. It is then postulated that under that Act, since all transactions involving illegal extension of credit are to be deemed void, the various brokers who sustained losses, harsh though the rule may be, have no claim, ignoring any analogy to the clean hands doctrine, and the concept of *pari delicto*. Had they bought in on the day Naftalin & Co. failed they would have had a valid claim, but so the argument runs because the "buy up" in each instance was two months or more later, the brokers in effect extended illegal credit

to Naftalin & Co. during that period and therefore lost their rights. A great portion of the briefs of the parties is devoted to a discussion of the Securities and Exchange Act, Regulation T promulgated thereunder, Rules and Regulations of the New York Stock Exchange, etc., and other matters (clearly not jury issues) in an attempt to convince the court as a matter of law one way or another as to the applicability and interpretation of the proper provisions of law. Were the court to permit a jury trial, at the conclusion thereof both parties undoubtedly would claim as a matter of law the desired result. While this alone does not determine a right to a jury trial, certainly the court would not submit to the jury the question for instance as to whether Regulation T applies, or its interpretation, nor the effect of the Securities and Exchange Act. These are questions of law and will remain for the court's decision irrespective of the exact facts which may be produced at a trial. There is no dispute as to the sales, the "buy in," the dates thereof, etc. The real question is the legal effect thereof and the laws, rules or regulations applicable.

Legal determinations such as whether the securities were "promptly" deposited within the meaning of Section 4(c) (1) (ii) of Regulation T (12 C.F.R. 220); whether Section 7 of the Securities Exchange Act of 1934 and Regulation T apply; whether there is any consequence, and if so what it is, of a violation of any Act, section or regulation; whether the conduct of the alleged bankrupt has amounted to a waiver of Section 29(b) of the Securities Exchange Act of 1934, the section that voids transactions where no prompt deposit was made; and whether the respondent is a "customer" within the meaning of the Act are the elements which must be decided to arrive at a proper conclusion. Any factual determinations which must be made to decide these or other legal issues are not seriously in dispute and are far removed from the legal determination as to whether the respondent is insolvent and whether an act of bankruptcy has been committed.

As to the act of bankruptcy, if the respondent is found to be insolvent, there is no question but that a receiver was appointed. Whether he was a receiver within the meaning of 11 U.S.C. § 21(a) (5) is a question of law.

In his own brief (p. 3), Naftalin & Co.'s counsel stated it correctly:

"The question of whether or not the Petitioners are 'creditors' of Naftalin within the meaning of § 59 of the Bankruptcy Act is not a question of fact at all, but is rather one of law * * *."

Such being so, and the court not believing that the right to a jury trial is so "absolute" that at the conclusion thereof it would not or could not grant a directed or instructed verdict if warranted as a matter of law, the conclusion is inescapable that a jury trial avails nothing for there is no fact issue for determination by a jury. Therefore, this court should not interfere nor intervene in the usual orderly administration of justice and established procedures and should refer these petitions to the Referee in Bankruptcy for hearing and determination.

Just as the determination of the merits is for the referee in the first instance, so too it is proper for him to make the initial determinations as to allowable discovery and the proper method by which to proceed in this litigation.

A separate order has been entered referring these cases to the referee for future proceedings.