**H.E. BRANNAN, H. Keith Robley, and Conrad Markmueller, Appellants,**

v.

**Joel B. EISENSTEIN, Charles R. Schroeder and Wayne Koch, Appellees.**

No. 85–2484.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1986.

Decided Nov. 4, 1986.

David L. Campbell, St. Louis, Mo., for appellants.

Richard P. Sher, St. Louis, Mo., for Eisenstein.

Gary P. Paul, Brinker, Doyen & Kovacs, Clayton, Mo., for Schroeder.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Circuit Judge.

H.E. Brannan, Keith Robley and Conrad Markmueller, officers and directors of Bemor Petroleum, Inc. (directors), appeal an order of the district court dismissing their claims alleging violations of federal and state securities laws, violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), and common law fraud. For the reasons set forth below, we affirm.

This action arises out of sales of interests in oil and gas leases by Bemor Petroleum, Inc. (Bemor) to a group of investors including Joel B. Eisenstein, Charles R. Schroeder, and others (hereinafter collectively referred to as purchasers), during June, July, and August of 1982. In January of 1983, the purchasers brought an action against Bemor and its officers and directors for rescission of the sales of the interests contending they were sold in violation of Missouri's blue sky laws because they were not registered in Missouri. *See* Mo.Ann.Stat. § 409.301 (Vernon 1979). On October 4, 1983, a Missouri circuit court granted summary judgment in favor of the purchasers. Two days later, on October 6, 1983, Bemor and its officers and directors filed motions for leave to file counterclaims and third-party claims in the circuit court. On October 24, 1983, the circuit court denied the motion for leave to bring the coun-

terclaims. The Missouri Court of Appeals subsequently affirmed the circuit court's orders granting summary judgment and denying the motion. *Dunn v. Bemor Petroleum, Inc.*, 680 S.W.2d 304, 306 (Mo. App.1984).

The directors then filed suit in federal district court alleging violations of section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5, RICO, the Missouri blue sky laws, and common law fraud. Specifically, the directors allege that Schroeder and Eisenstein knew the securities were subject to registration requirements, yet failed to inform Bemor of that fact prior to Bemor's sales to Schroeder and Eisenstein. Additionally, the directors allege that Schroeder and Eisenstein, without the knowledge or authorization of Bemor, misrepresented the risk involved in the securities to the other investors and failed to inform them that the securities were not registered for sale as required by Missouri law. Thus, the directors contend that the losses incurred as a result of the state court action and judgment would not have occurred but for the conduct of Schroeder and Eisenstein.

■ On November 15, 1985, the district court granted a motion by Schroeder and Eisenstein to dismiss the action finding the Missouri blue sky and common law fraud claims precluded by the prior state court adjudication. The court also found that, although the federal courts have exclusive jurisdiction over claims brought under the Securities Exchange Act of 1934, the section 10(b) cause of action was barred by principles of res judicata because the losses alleged by the directors were caused by state securities law violations the basis of which had been fully litigated in state court. Finally, the court dismissed the RICO claim because it had already dismissed the securities fraud claims forming the basis of the predicate acts upon which the RICO claim was based. The directors appeal the action of the district court.[1]

---

1. The directors also brought claims before the district court under Section 15 of the Securities Exchange Act of 1934, 15 U.S.C. § 78o, and Section 17(a) of the Securities Act of 1933, 15

U.S.C. § 77q(a). The district court dismissed both claims determining that neither section confers a private right of action. We affirm. *See Greater Iowa Corp. v. McLendon,* 378 F.2d

### State Securities Law Violations and Common Law Fraud

■ Title 28 U.S.C. § 1738 requires federal courts to give the same effect to state court judgments as those judgments would have "by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738; *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Under the law of Missouri, a party must plead, as a counterclaim, any claim it has against any opposing party at the time pleadings are filed: if the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; is not the subject of a pending action; and does not require the presence of third parties over whom the court cannot acquire jurisdiction. Mo.Stat.Ann. § 509.420 (Vernon 1952); Mo. R.Civ.P. 55.32 (1986). Thus, a compulsory counterclaim in a prior action is barred in a subsequent action. *See, e.g., State ex rel. J.E. Dunn, Jr. & Associates v. Schoenlaub*, 668 S.W.2d 638 (Mo.App.1983). We are bound by the Missouri compulsory counterclaim rule. *See Texas Gulf Citrus & Cattle Co. v. Kelly*, 591 F.2d 439, 441 (8th Cir.1979).

The directors seek to avoid application of the compulsory counterclaim rule in this Court. They argue that their claims either did not exist or were not mature at the time the purchasers filed their claim in state court because the directors' claim was dependent on the outcome of the state court proceedings. Yet, according to Missouri law, "a claim accrues * * * when a person 'has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him.'" *Myers v. Clayco State Bank*, 687 S.W.2d 256, 263 (Mo.App.1985), (*quoting, Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 150 (Mo.1967)).

The directors knew, at the time the purchasers filed their action in state court, of the events giving rise to the state claim. Their claim is not in the nature of contribution. On the contrary, it is for an amount, in addition to the amount of the state court judgment, representing the cost of defending the action and injury to personal and business reputation. Such damages were not contingent upon the outcome of the state court action. In short, the directors had "some notice that they had suffered an injury or that another person had committed a legal wrong which ultimately might result in harm to them." *Id.* Thus, the directors' claim was sufficiently mature, at the time the purchasers brought their action in state court, to form the basis of a compulsory counterclaim under Missouri law. Since the federal courts must give the same preclusive effect to the Missouri judgment as it would have in a Missouri state court, the state law claims are precluded in federal court.

### The Section 10(b) and Rule 10-b Claim

■ Unlike the state law claims, the directors' section 10(b) and Rule 10b–5 claims are not precluded by the prior state court action. The jurisdictional basis for claims brought under the Securities Exchange Act of 1934, is found in section 27 of the Act, 15 U.S.C. § 78aa. The section provides, "[t]he district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules or regulations thereunder." 15 U.S.C. § 78aa. Thus, the federal courts have exclusive jurisdiction over claims brought under the Securities Exchange Act of 1934. *See, e.g., Moran v. Paine Webber, Jackson and Curtis*, 279 F.Supp. 573 (E.D. Pa.1967), *affd.*, 389 F.2d 242 (3rd Cir.1968); *In re Naftalin & Co.*, 315 F.Supp. 463 (D.Minn.1970); 3 Loss, Securities Regulation ch. 12I p. 2005–06. Since the directors' section 10(b) and Rule 10b–5 claims arise out of alleged violations of the 1934 Act, the state court was without jurisdiction to entertain those claims. Absent state court jurisdiction, Missouri's compulsory counter-

783, 789–90 (8th Cir.1967); *S.E.C. v. Seaboard*     *Corp.*, 677 F.2d 1301, 1313–14 (9th Cir.1982).

claim rules and the principles of claim preclusion do not bar the directors' section 10(b) and Rule 10(b)–5 claims because they could not have been brought in state court.

◼ Notwithstanding the exclusive jurisdiction of the federal courts over the claim, principles of issue preclusion, or collateral estoppel, remain applicable. Under such principles, the directors are estopped from relitigating an issue that has been fully and finally litigated in a prior action. *See, e.g., City of Bismarck v. Toltz, King, Duvall, Anderson and Associates, Inc.*, 767 F.2d 429, 430–31 (8th Cir.1985). In reviewing the directors' claim, therefore, we must accept the state court's determination of those issues that were fully and finally litigated. Review of the circuit court judgment and the opinion of the Missouri Court of Appeals reveals that the state action determined that Bemor sold unregistered interests in violation of Missouri law.[2] The directors are now estopped from relitigating this point. Issues concerning the knowledge of Schroeder and Eisenstein and any misrepresentations they may have made to the other investors or to the directors were not, however, litigated in the state action and are not precluded as the district court's opinion implies. *See Dunn*, 680 S.W.2d at 306 (equitable defenses of estoppel and *in pari delicto* not applicable in state action for sale of unregistered securities).

◼ Nonetheless, the directors' claims under section 10(b) and Rule 10b–5 must be dismissed for lack of standing.[3] Standing under section 10(b) and Rule 10b–5 is limited to actual purchasers or sellers of the securities connected with the alleged misstatements or omissions. *See, e.g., Blue Chip Stamps v. Manor Drug Stores, Inc.*, 421 U.S. 723, 749, 95 S.Ct. 1917, 1931, 44 L.Ed.2d 539 (1975); *City National Bank of Fort Smith v. Vanderboom*, 422 F.2d 221, 228 (8th Cir.1970). The directors allege that they have standing as sellers of securities. They argue that their status as sellers was fixed, for the purposes of this case, in the state court action and that Schroeder and Eisenstein are now estopped from contesting that fact. We are not convinced. The Missouri Court of Appeals did not find that the directors were sellers of securities. Although the appeals court found the directors joint and severally liable with Bemor for the sale, that liability was predicated upon Mo.Stat.Ann. § 409.411(b) (Vernon Supp.1986). That section provides:

(b) Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller * * * is also liable jointly and severally with and to the same extent as the seller, unless the *non-seller* who is so liable sustains the burden of proof that he did not know,

---

**2.** Mo.Stat.Ann. § 409.301 provides, "It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 409.402."

**3.** Section 10(b) of the 1934 Act provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1976).

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange.

(a) To employ any device scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1982).

and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. [Emphasis added.]

The court of appeals opinion specifically pointed out that the directors were not sellers but were liable to the same extent as the sellers. It stated, "[t]he undisputed facts set forth in their answer and affidavits show appellant officers and directors were aware of all facts from which their liability is alleged to exist. Therefore, they are in the same shoes as seller by reason of Section 409.411(b)." *Dunn,* 680 S.W.2d at 306. Thus, although the court found the directors and Bemor jointly and severally liable, it did not impose liability on the directors because they were sellers. The court's opinion and the applicable statute are clear that the directors' liability as nonsellers attached solely by reason of their knowledge and position within the company.

Moreover, even if the state court had characterized the directors as sellers, it would have been solely for purposes of applying the state statute. The federal courts would not be bound by that characterization for purposes of applying the antifraud provisions of the federal securities laws. *See Alley v. Miramon,* 614 F.2d 1372, 1381 n. 18 (5th Cir.1980) (federal law governs construction of all aspects of Rule 10b–5). Applying federal law, the directors do not have standing to maintain an action against Schroeder and Eisenstein because they were not actual sellers of the securities. *See, e.g., Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). This Court has had occasion to apply *Blue Chip Stamps* in *Vervaecke v. Chiles, Heider & Co.,* 578 F.2d 713 (8th Cir.1978). In that case we said, *"Blue Chip Stamps * * *

sets forth a rigid rule of standing which limits the class of plaintiffs entitled to sue for violations of Rule 10b–5. Under the *'Birnbaum'* rule adopted by the Court in *Blue Chip Stamps * * * * recovery is limited to 'purchasers or sellers of the stock in question.'"* *Id.* at 719. The directors, in their complaint, do not allege that they were the actual sellers of the securities in question. Rather, they simply allege that the state court held them to be sellers. We have already pointed out that there is no merit to this allegation. Thus, under federal law the directors were not the actual sellers of the securities and do not have standing to bring an action based upon section 10(b) or Rule 10b–5.

### The RICO Claim

The directors also argue that the district court erred in dismissing their RICO claim. Violation of the substantive provision of RICO upon which the directors rely requires 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity.[4] *See Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). At a minimum, a RICO claimant must be able to prove that the defendant engaged in "racketeering activity" as defined in 18 U.S.C. § 1961(1).[5] In this case, the directors allege securities fraud and wire fraud as the basis of racketeering activity. Since we have already found that the directors' state and federal securities fraud claims as well as the common law fraud claim were properly dismissed, the directors may not rely upon the same conduct as the basis of any securities fraud that may constitute racketeering activity.

As to the remaining alleged predicate act, wire fraud requires a fraudulent scheme and use of the wire or telephone in furtherance of the scheme. *See United*

---

4. Section 1962(c) of RICO provides:

    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

    18 U.S.C. § 1962(c).

5. Section 1961(1) of RICO provides:

    (1) "racketeering activity" means * * * (B) any act which is indictable under any of the following provisions of title 18, United States Code: * * * section 1343 (relating to wire fraud) * * * (D) any offense involving * * * fraud in the sale of securities[.]

    18 U.S.C. § 1961(1).

*States v. Andrade,* 788 F.2d 521, 527 (8th Cir.1986). The fraudulent scheme alleged by the directors, however, consists solely of statements and omissions by Schroeder and Eisenstein in connection with the sales of the securities. Since we have affirmed the dismissal of the securities fraud claims, the same conduct cannot constitute a fraudulent scheme giving rise to a wire fraud claim. Thus, wire fraud also fails as a basis for racketeering activity. Since the directors have failed to identify conduct of Schroeder and Eisenstein constituting racketeering activity, the RICO claim must be dismissed.

### Conclusion

For the reasons set forth above, we affirm the district court's entry of summary judgment in favor of Schroeder and Eisenstein and its dismissal of the directors' complaint in its entirety.